HENRY M. ANGELL v. WILLIAM PICKARD, UNDER SHERIFF OF
ISABELLA COUNTY.

*Contract for sale of stock of goods—Sufficiently identifies property by reference to an invoice of same—Giving date when taken and place of deposit —And describing store in which goods are kept—With stipulation that additions to the stock since the invoice are covered by purchase—Ordinarily, a sale of all the goods in a specified store is a sufficient description— Purchase price and terms of payment— Sufficiently fixed by providing for deducting from amount of invoice and additions to stock —Cash on hand at time of sale—And sum due vendee and his brother from vendor, estimated at $12,000, to be ascertained definitely in thirty days if possible—Balance to be paid in specified sums at expiration of fixed periods— Vigilant creditors—May secure payment of just debt, though aware that such action may deprive other creditors of their full demands—Evidence—Of all that was said and done between parties —At and before alleged fraudulent sale—Admissible to establish or rebut charge of fraud—Object is not to vary terms of written contract—But to show good faith of transaction—Delivery of goods sold— By vendor and vendee joining in telegram and letter to clerks in charge of vendor's store—Notifying them of sale—And directing them to open new cash account—And secure transfer to vendee of lease of store and of policies of insurance on goods—All of which was done—Coupled with*

*delivery of store key to vendee—Sufficient under statute of frauds—Burden on attaching creditor to show sale fraudulent—If delivery not shown, sale conclusively void as to creditors, unless shown to have been made in good faith and without intent to defraud them— Vendor may state whether sale was absolute—And if there were any reservations outside of it— And either party may testify as to his intent in entering into the contract —Assignment for benefit of creditors—Attachment made on afternoon of day of assignment, but after assignee had taken possession of a portion of assigned property, is void—In such a case fractions of a day will be counted—Assignee has the right to recover all of the assigned property which any creditor might reach—Chancery court of proper county has supervisory control of assignment and matters relating thereto— With power to direct suits for recovery of all property claimed by third persons —If trust has not failed, receiver succeeds to powers of assignee— Creditors cannot sue in either case.*

1. Plaintiff purchased of his brother certain personal property, described in the contract as the vendor's *entire* stock in trade, including *all* store furniture and fixtures, and notes and accounts belonging to said trade, and *all* the property in said store—locating it geographically—belonging to the vendee or connected with said trade, excepting that portion reserved to the vendor in an invoice of a certain date, deposited in the safe in said store. The sale was to take effect as of the opening of business on the morning of the day it was made, and the cash then on hand was reserved from the sale. The purchase price was fixed, and its payment provided for, as follows:

*a*—Plaintiff was to be charged with the amount of the invoice, *less* the excepted articles; also with *all* additions to the stock, at *cost* prices, and with the expenses of conducting the business *since* the date of the invoice.

*b*—From *this* aggregate sum was to be deducted the cash on hand on opening the new business, and the amount due plaintiff and his brother from the vendor, *estimated* at $12,000, which was to be definitely ascertained within the next thirty days, if possible.

*c*—The *balance* found due the vendor was to be paid in *cash*, in *specified* payments as to amount and time; and plaintiff agreed to pay the amount found to be due his brother from the vendor within *five* years from the date of the contract, which was signed by the *three* brothers, *each* of whom released to the *others* all claims for debts, dues, etc.

Creditors of the vendor attached the goods, and in a suit involving the validity of the sale the contract was objected to as void as to creditors in that it transferred an *uncertain* amount of property for an *uncertain* consideration, and tied up the property, and the payment therefor, in a manner *necessarily* to hinder and delay *other* creditors in the collection of their debts.

*Held*, that the contract was *not* open to the objections urged against it; that it is sufficiently definite as to the property sold, referring to an invoice identified as to *date* and *place* where deposited, and that

it can be readily ascertained *what* goods have been added to the invoiced stock *since* its date.

*Held*, further, that a sale of *all* the goods and fixtures in the store, without specifying or enumerating them, would be definite enough ordinarily; and in this case the reservations and exceptions made from the stock, and the notes and accounts excepted, can be ascertained by reference to the invoice.

*Held*, further, that the consideration agreed to be paid for the goods and the terms of payment were not uncertain, and that to require, in *such* a case, that a *complete* inventory be made, and a computation of the *exact* amount due from the vendor to his brothers, before a valid sale of the goods could be made as payment of such indebtedness, would be adding to the requirements of the statute.

2. A creditor, seeking the payment of a just debt from a debtor known to be in failing circumstances, has a right to secure his pay, even though aware that the consequences of such payment would leave other creditors minus their full demands.

3. In a suit between a vendee of a stock of goods and attaching creditors of the vendor, *all* that was said and done between the parties *at* and *before* the making of the agreement is competent evidence, not only to show fraud, but to rebut it, its object not being to vary or alter the terms of the written contract for such sale, but to show the good faith of the transaction.

4. Where, on the execution of a contract for the sale of a stock of goods, the vendor and vendee joined in a telegram and letter to the clerks in charge of the store and business, notifying them of the sale and directing them to close up the cash account as of the previous evening, and secure a transfer of the lease of the store and policies of insurance on the goods to the vendee on receipt of such letter, which instructions were obeyed: and the vendor, at the same time, delivered to the vendee the key of the store, who thereafter carried on said business until the property was seized by attaching creditors of the vendor,—

*Held*, in a suit against the attaching officer to recover said property, that the telegram and letter, and the action of the clerks in pursuance of the instructions therein contained, were competent and material evidence as bearing upon the question of the *delivery* of the goods, *it* being denied by the defendant as having taken place at time of the seizure under the writs of attachment.

*Held*, further, that upon the facts stated there was a sufficient delivery and transfer of the possession of the property sold to meet the requirements of the statute of frauds, and that in such a case the burden of proving the sale fraudulent is upon the attaching creditors.

5. Where a sale of personal property is assailed as fraudulent by attaching creditors, it is competent for the vendor to state whether

the contract (a written one) was an *absolute* sale, and whether there were any reservations outside of it; and the vendee may testify whether he had anything in view except an *honest* purchase of the goods.

In such cases the parties may testify as to their *intent* in entering into the contract. *Hyde v. Nelson*, 11 Mich. 353; *Brown v. Blanchard*, 39 Id. 790; *Bedford v. Penny*, 58 Id. 424–5.

6. The vendor of a stock of goods made a general statutory assignment of *all* of his property on the morning of the day succeeding such sale, and the assignee took possession of a *portion* of the assigned property, but not of that covered by such sale, it having been delivered to the vendee on the previous day. On the afternoon of the day the assignment was made creditors of the vendor attached the stock of goods *then* in the possession of the vendee, and some days afterwards a bill was filed to enforce the trust under the assignment— the assignee having failed to give the required bond—and a receiver was appointed. The vendee and attaching creditors were made parties in the chancery suit, and the receiver was directed to execute the trust created by the assignment, and in his discretion to commence a replevin suit against the vendee for the goods sold him.

*Held*, in a replevin suit brought by the vendee against the attaching officer, that the attachment levies were void, and that if the sale was fraudulent as to creditors the. *assignee* or *receiver* was the *only* person to bring suit for the goods, or who could move to set aside the sale.

7. It is always admissible, in a case involving adverse claims to the possession of property under legal proceedings, to show that *one* of the parties moved at a *certain* hour of the day *before* action was taken by the *other*.

8. An assignment, under How. Stat. § 8741, confers upon the assignee the right to recover *all* property which may be reached or recovered by *any* creditor of the assignor, and the circuit court in chancery for the proper county has supervisory control of all matters and disputes arising out of or under the assignment, and the power to make orders for the recovery of *all* property claimed by *third* persons; and where the trust has *not* failed, a receiver takes the place and succeeds to the powers of the assignee, and in *either* case creditors cannot sue. *Barnum Wire Works v. Speed*, 59 Mich. 278–9; *Root v. Potter*, Id. 499–504.

Error to Isabella. (Hart, J.) Argued April 20 and 21, 1886. Decided June 17, 1886.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion and head-notes.

*Wheeler & McKnight*, for appellant :

The contract under which plaintiff claims the property cuts off creditors' rights for a term of years only terminated at the will of the parties, and would be void in an assignment: *Pierson v. Manning*, 2 Mich. 446; *Hubbard v. Taylor*, 5 Id. 155; *Sutton v. Hanford*, 11 Id. 519; *Robinson v. Stewart*, 10 N. Y. 189.

On the question of plaintiff's being a bona fide holder, counsel cite : *Cron v. Cron's Estate*, 56 Mich. 8; *Green v. Tantum*, 19 N. J. Eq. 105; *Bartles v. Gibson*, 17 Fed. Rep. 293.

Plaintiff claims under title from defendant in attachment, not as one in actual possession, and a demand was necessary : *Hatch v. Fowler*, 28 Mich. 209; Wells on Replevin, § 368, and cases cited.

[Counsel discuss the other questions covered by the opinion, but cite no further authorities.—REPORTER.]

*Huntington & Henderson*, for plaintiff :

The contract clearly defines the property, and expresses an intent to pass the title at once, which is emphasized by the telegram, letter, delivery of the key, and transfer of lease and insurance ; and the sale was a valid one: *Whitcomb v. Whitney*, 24 Mich. 486 ; *Van Etten v. Hemann*, 35 Id. 515 ; *Colwell v. Keystone Iron Co.*, 36 Id. 51 ; and these constituted a good delivery, and the burden was upon the attaching creditors to show the sale fraudulent as to creditors: 1 Parsons on Contracts, 530.

The consideration and terms of payment are certain and specific.[1]

Levies made upon the property of an assignor after an assignment has been made and *accepted* are void : How. Stat. § 8739; *Fuller v. Hasbrouck*, 46 Mich. 78; *Coots v. Radford*, 47 Id. 37 ; *Lyon v. Receiver of Taxes*, 52 Id. 271; and the only way to question the validity of a sale made by the assignor prior to the assignment is by proceedings instituted by the assignee: Same authorities, and *Com. National Bank v. Mosser*, 57 Mich. 386.

MORSE, J. This is an action of replevin, brought by the plaintiff against the defendant, who is under-sheriff of Isabella county, to recover a stock of goods.

---

[1] See opinion, page 567.

The defendant claims to be rightfully entitled to hold the goods by virtue of writs of attachment in his hands against Eugene Angell, a brother of plaintiff, under which writs he levied on the goods, May 17, 1883, and was in possession of them at the time of the issue of the writ of replevin. The case was tried in the circuit court for the county of Isabella, before a jury. Plaintiff had verdict and judgment. Defendant brings error.

There are 44 assignments; but, in disposing of them, we shall group them as presented in appellant's brief.

A brief statement of the important facts may be necessary in order to understand fully the questions raised, and to intelligently dispose of them.

In May, 1883, Eugene Angell was a resident of Lansing, Michigan, where he had been for some years carrying on a banking business. He was also engaged in the mercantile business, having a store and stock of goods at Mount Pleasant, in the county of Isabella.

His capital was mainly acquired from the estate of his father, who died in June, 1872. The plaintiff, Henry M. Angell, and John M. Angell were younger brothers of Eugene, and equal heirs with him of their father's property. Upon the father's death, Eugene, with the knowledge and consent of the others, but who were then both minors, was appointed administrator, and took possession of all the property, and thereafter used, managed, and disposed of the estate as he saw fit. The two younger boys lived with him, and were supported by him. Henry M. was 17 years old, and John M. 11 years of age, when their father died.[1]

In the fall of 1882 there began to be talk among the three brothers about a settlement of their affairs and a division of the property. About the first of May, 1883, Eugene and Henry M., both then living in Lansing, agreed upon a settlement, and went to Mount Pleasant, where John M. then was, where they remained until about the fifteenth of that month. On that day Eugene left for Lansing, with the understand-

---

[1] Their father died in June, 1872, *intestate*, leaving the *three* brothers as his *sole* heirs at law.

ing that his brothers should follow him the next day for the purpose of perfecting the transaction by executing the necessary legal documents. On the sixteenth of May, 1883, a contract was drawn and executed by the three brothers, by the terms of which Henry M. and John M. quitclaimed their interest in certain real estate to Eugene, and Eugene sold and transferred to Henry M. the entire stock in trade at Mount Pleasant, including store furniture and fixtures, and all notes and accounts belonging to said trade, excepting and reserving therefrom what was saved and excepted in a certain invoice that had been made in the month of March, 1883. The cash on hand the morning of May 16th was to belong to Eugene, and not pass, but Henry M. was to take the business that morning, and have all the cash thereafter taken in. The payment of said goods was provided for as follows:

" And said Henry M. Angell agrees to pay therefor as follows:

" 1. He shall have charged against him the amount of such invoice of March 1, 1883, as then computed, including said notes and accounts so invoiced and not reserved to said Eugene Angell.

" 2. Whatever goods and property have been added to said stock since that time shall be charged against him at cost prices.

" 3. The expenses of conducting such business since said first day of March last shall be charged against him. From the aggregate of such charges shall be deducted:

" *a*—The amount of cash on hand this morning at the opening of business.

" *b*—Whatever may be due or owing from said Eugene Angell to both or either said Henry M. Angell and John M. Angell; it being understood that out of the matters connected with the estate of their deceased father, including the conveyance this day made, and including the interest of said Henry M. Angell and John M. Angell, the said Eugene Angell is indebted to said Henry M. Angell, as near as can now be estimated, in about the sum of eight thousand dollars, and to said John M. Angell in about the sum of four thousand dollars."

It was further stated in the agreement that the amount of the indebtedness of Eugene to the others was not intended to be stated accurately as above; but whatever sum was

found to be due, more or less, should be thus deducted. When this indebtedness was definitely determined, and deducted from the value of the stock, Henry M. agreed to pay the balance found, in cash, as follows: Five hundred dollars at the end of each thirty days for the first year, and $250 every thirty days after the first year, until the whole amount was paid. And Henry M. agreed to pay John M. whatever was found due from Eugene to him. Each party released to the others all claims for debts, dues, etc. It was agreed, further, as speedily as possible to ascertain and determine the amount due from Eugene to the others.

At the time of this agreement the store at Mount Pleasant was in charge of a Mr. Simons and one Johns, clerks of Eugene. They were aware of the contemplated transfer, and were to be notified of its completion. On the sixteenth of May, the day the agreement was executed, Eugene and Henry M. joined in a telegram to Johns, notifying him of the sale, and ordering him to continue the business, and that everything done since morning was to belong to Henry M., and for Johns to keep cash and sales since morning separate. A letter was also dispatched to Simons and Johns, as follows:

"LANSING, MICHIGAN, May 16, 1883.

"*S. A. Simons, A. D. Johns*—GENTLEMEN: We have just telegraphed Mr. Johns that Eugene has sold out the stock, business, and fixtures, and everything pertaining to the business up there, to me, Henry M. It is understood between us that the same shall take effect from this morning, and that the proceeds of the business, and all the cash received, and everything pertaining thereto, from this morning, shall belong to Henry. Up to the close of business last night everything belongs to Eugene; so you see it will be very important that we be able to exhibit hereafter just the condition of business when the store opened this morning,—how much cash was on hand, and the entire situation at the opening of business this morning.

"Don't understand by this that we desire a new account of stock taken at present. Now, as soon as you receive this letter go at once and have all the insurance policies which cover this stock transferred from Eugene to Henry M. as

soon as convenient; also have the lease transferred from Eugene to Henry M., or a new lease made.

"Yours very truly,

"EUGENE ANGELL,
"HENRY M. ANGELL."

The telegram was received by Johns on the 16th, and he at once balanced the cash, and had the lease of the store and policies of insurance on the stock transferred to Henry M. on the same day.

The letter was received on the morning of the 17th.

On the seventeenth day of May, 1883, at about 3 o'clock A. M., Eugene Angell made an assignment of his property for the benefit of his creditors; naming Arthur N. Hart as assignee. The assignment was made under the statute. Hart took possession under the assignment; but, failing to give the bond required, certain creditors of Eugene Angell, on the twenty-ninth day of May, 1883, filed in the circuit court in chancery for the county of Ingham a bill to enforce the trust under such assignment, and asking that a receiver be appointed for that purpose.

On the twenty-eighth of June, 1883, in accordance with the prayer of said bill, a receiver, S. H. Carmer, was appointed, and directed to carry out and execute the trust created by the assignment; and he was further directed to commence, in his discretion, a suit against Henry M. Angell in replevin for the goods in the store at Mount Pleasant; the bill making said Henry M. a party defendant, and alleging that the sale to him by Eugene of said goods was void as an unlawful preference.

In the meantime, and on the seventeenth day of May, 1883, the defendant, as under-sheriff of Isabella county, had levied upon and seized these goods by attachments, issued out of the Isabella circuit court, in favor of John R. Price and E. S. Jaffray & Co., creditors of Eugene. The writ of replevin in the present case was issued and served on the second day of June, 1883.

In the proceedings in chancery in Ingham county the said John R. Price and E. S. Jaffray & Co. were made defend-

ants, and the bill prayed that they might be enjoined from proceeding further in their attachment suits.

It appears that the receiver, Carmer, investigated the matter of the sale to Henry M., and on the fourth day of August, 1883, reported to the court that he was offered $5,000 for the whole interest of the estate of Eugene in the goods at Mount Pleasant, advising the court that, in his opinion, it was for the best interest of the estate to accept the offer, and asking the authority of the court to do so. On the same day the court made an order authorizing such sale, and, pursuant to said order, he sold such interest to S. A. Simons for that sum, and reported the same to the court. Simons was then in the employ of the plaintiff, and made the purchase for him, and in his interest.

The main issue on the trial turned upon the *bona fides* and validity of the transfer or sale of this stock from Eugene to the plaintiff.

The introduction of the contract was objected to by defendant, and also the telegram and letter to the clerks in the store; and objection was also made to the evidence of conversations between Eugene and Henry and the clerks in the store, before the contract was entered into, leading to the making of the agreement, and tending to show that it was contemplated and talked about for some time before it was actually entered into and put in writing.

This sale was claimed to be fraudulent, and a wide latitude in proof must necessarily be and is admitted in such cases. All that was said and done between the parties at and before the making of the agreement was competent, not only to show fraud, but to rebut it. It was not introduced for the purpose of varying or altering the terms of the written contract, but to show the good faith of the transaction; and what was done afterwards in the way of telegram and letter, and acts done in pursuance of instructions therein contained, was competent and material as bearing upon the question of delivery, the defendant claiming that no delivery had taken place at the time he seized the goods under the attachments.

The court properly permitted Eugene to state whether the

contract was an absolute sale, and whether there was any reservation outside of the papers; and there was no error in allowing Henry M. to answer the question whether he had anything else in view except an honest purchase of the goods. In cases of this character we have repeatedly held that a party may be asked and state his intent: *Hyde v. Nelson*, 11 Mich. 353; *Brown v. Blanchard*, 39 Id. 790; *Bedford v. Penny*, 58 Id. 424–5.

It is also insisted here, as it was in the court below, that the contract was inadmissible, because, upon its face, it was void as against creditors,—transferring an uncertain amount of property for an uncertain consideration, and tying up the property, and the payment for it, so that it would necessarily hinder and delay the other creditors in the collection of their debts; and that it was void under the statute relating to common-law assignments.

We do not think the contract open to any of these objections. The contract seems to be as definite as it well could be as to the property. It refers to an invoice taken in March, and locates and identifies it as then being in the safe at the store, and in the handwriting of Simons. It would not be difficult, we think, to ascertain what goods had been purchased and placed in the store since that time.

A sale of all the goods and fixtures in the store, without specifying or enumerating them, would be definite enough ordinarily; and in this case the reservations and exceptions made from the stock, and the notes and accounts saved out, could be ascertained by reference to the invoice.

The consideration and the terms of payment are not at all uncertain. There was no difficulty upon the trial in ascertaining the exact amount due from Eugene to Henry M. and John M., and when that was done the amount to be paid was certain; and the amounts to be paid at different times, and at what dates to be paid, were definitely fixed by the contract, except that Henry M. could pay faster if he chose, which would be no disadvantage to creditors. To hold that it would be necessary to take a complete inventory of the goods transferred, and to compute to a certainty

the amount due from Eugene to his brothers, before a valid sale of the goods as a payment to them could be made, would be going further than the law requires.

We can see nothing in the transaction inconsistent with an honest desire on the part of Eugene to transfer to his brothers that which belonged to them, or a lawful effort on the part of Henry M. to obtain the money due him from his older brother. It must be remembered that Henry M. stands in this transaction in the character of a creditor, seeking the payment of a just demand, and, even though he knew that his brother was in failing circumstances, he had a right to secure his pay, even if he was aware that the consequences of such payment would leave some of the other creditors minus of their full demands.

The court correctly instructed the jury that the contract, upon its face, was not null and void as to creditors, and that the question of fraud, as a matter of fact, and under the statute of frauds, was for them to determine from all the circumstances of the transaction; and that under the statute of frauds, if there had been a delivery of the goods, and actual possession taken and held by Henry M. at the time the attachments were levied, the burden of proof was upon the defendant to show that the sale was fraudulent as against creditors; but if not, then the fraudulent character of the transaction was presumed, and the sale conclusively void as against creditors, unless it was shown by the plaintiff that the sale was made in good faith and without intent to defraud the creditors.

And further charged them, substantially, that if the arrangement for the sale was made by the plaintiff as claimed; that the clerk was instructed as claimed by telegraph, and, when thus notified, made the change in the business, as shown by the evidence on the part of the plaintiff, and Eugene turned the key in his possession over to Henry M. that day at Lansing, and the business was carried on on the 16th, after notice as aforesaid, and before attachment levies, as the business of Henry M.,—there was a sufficient delivery and transfer of the possession to meet the requirements of

the statute, and the burden of proving fraud was placed upon the defendant.

Objection is further made to the charge of the court in relation to the effect upon this case of the assignment for the benefit of creditors.

The court instructed the jury that, if they found that the assignment was executed in the morning of the 17th, and Hart, the assignee, proceeded to take possession of the property at Lansing under it, accepting the trust, and the attachment levies were not made until the afternoon of that day, the levies were void, and the sheriff obtained no legal possession of the goods by virtue of the attachments, and the plaintiff was entitled to recover ; that if the sale was fraudulent, in such case the receiver or assignee under the statute was the proper and only person to bring suit for the goods, or to move to set aside the sale.

If this proposition be sound, the question of fraud submitted to the jury became immaterial. We think the circuit court was right. It is contended by defendant's counsel that the day cannot be split up in this manner, and that the attachment levies must be treated as simultaneous with the making of the assignment.

While, for many purposes, the law does not deal with or recognize parts of a day, it is always admissible, in a question of fact, like this, involving the possession of property, to show that one party moved at a certain hour, and before another did, upon the same day.

It is also argued that the plaintiff could not claim to own these goods by an honest purchase of them, and then, when the sale was attacked for fraud, turn upon the defendant and say, "I am entitled to hold the goods as against you, because, if my purchase was fraudulent, the property belongs to another, and not to you."

It must be remembered, however, that the plaintiff was in the possession of these goods by a transfer from the owner, fair upon its face, and entitled to the possession of them as against all the world except the creditors of his brother ; and if it be true, under the circumstances of this case, that no

one can represent the creditors in reclaiming the property but the assignee or the receiver, then the defendant has no more right to meddle with the goods than any other stranger.

We think the circuit judge correctly stated the law upon this point.´ If the attachments were levied after the assignment, as stated by the court, none of the creditors had any right to levy upon .any of his property : How. Stat. § 8739. See, also, *Fuller v. Hasbrouck*, 46 Mich. 78; *Coots v. Radford*, 47 Id. 37; *Lyon v. Receiver of Taxes*, 52 Id. 271. The assignment under the statute confers upon the assignee the right to recover all property of any nature which may be reached or recovered by any of the creditors of the assignor : How. Stat. § 8741. And the circuit court in chancery for the proper county has supervisory control over all matters and disputes arising out of or under the assignment, and the power to make orders, as in this case, for the recovery of all property claimed by third persons : How. Stat. § 8749. In this case the trust has not failed, and the receiver, in all things, takes the place and standing of the assignee.

We held in *Root v. Potter*, 59 Mich. 499–504, that only the assignee in assignment could attack securities or conveyances made by the assignor to third parties, and that creditors could not sue. In the decision denying a motion for rehearing in *Barnum Wire Works v. Speed*, 59 Mich. 278–9, we also held that the receiver represents all the interests and stands in the place of the assignee.

If the jury, therefore, found the property of the assignor transferred under the assignment before the attachments were levied, the particular creditors represented by this defendant had no standing in court to contest the honesty of the sale to plaintiff, and could only move through the receiver, or by invoking the machinery of the Ingham county court in chancery to operate upon him, if he were unfaithful to his trust and duty in the premises.[1] ·

---

[1] See "Assignment for Benefit of Creditors," 59 Mich. 650; 60 Id. 661.

In this view of the case, the other errors assigned become unimportant, and the judgment below will be affirmed, with costs.

The other Justices concurred.

