KLOECKNER, Assignee, etc., Respondent, vs. BERGSTROM and others, Appellants.

*October 18 — November 3, 1886.*

*Voluntary assignment: Fraudulent transfer: Rights and remedies of assignee.*

The title to property fraudulently transferred by the assignor prior to an assignment for the benefit of creditors, does not, even under ch. 170, Laws of 1882, pass to the assignee, and he cannot, therefore, maintain an action for the conversion of such property against the party holding the title and possession.  His only remedy is by an equitable action to avoid the fraudulent transfer and subject the property, so far as may be necessary, to the execution of the trusts of the assignment.  [*Sed quære,* when the transfer is void under ch. 349, Laws of 1883.]

APPEAL from the Circuit Court for *Winnebago* County. The following statement of the case was prepared by Mr. Justice Taylor as a part of the opinion:

The plaintiff, as assignee of Emil Schmidt, brought this action to recover the value of a certain stock of hardware, which he alleges had been wrongfully converted by the de-

fendants, and to which he claimed title as assignee. The complaint alleges that on the 29th day of December, 1883, Emil Schmidt sold and assigned, as provided by law, all his property, effects, and assets to the plaintiff in trust for the benefit of his creditors, which trust the plaintiff duly accepted, and has since been acting as such assignee; that on the 8th day of January, 1884, as such assignee, plaintiff owned certain goods, describing the stock of hardware, etc., being the stock in trade of said Emil Schmidt, and of the value of $4,070; that on the day last mentioned the defendants were in possession of the same, and on that day the plaintiff duly demanded the same of the defendants, and they refused to deliver, and have ever since refused to deliver, the same to the plaintiff; and that on said day the defendants converted the same to their own use wrongfully, to the plaintiff's damage of $4,070, for which judgment is asked.

The answer of the defendants alleges that on the 24th of December, 1883, the said Emil Schmidt was justly indebted to them, viz., to *John Pritzlaff* in the sum of $1,466.61, and to the defendants *Bergstrom* and *Babcock* in the sum of $672.26; and that, to secure the payment of said indebtedness, the said Emil Schmidt on that day executed and delivered contemporaneously two chattel mortgages, one in favor of said *Pritzlaff* to secure the said indebtedness of $1,466.61, with interest at eight per cent., and the other in favor of *Bergstrom* and *Babcock* to secure the said sum of $672.26, with interest at eight per cent., both of which chattel mortgages were duly filed December 24, 1883, in the office of the city clerk of the city of Oshkosh, the place where said Schmidt then resided. The answer then sets out at length the conditions of said chattel mortgages, and, among others, the usual condition that if the mortgagees should at any time deem themselves insecure they might take the mortgaged goods, and sell the same, and

apply the proceeds to the payment of the mortgage debts. They allege that the mortgages were taken in good faith to secure an actual indebtedness, and not in contemplation of an assignment or of insolvency of the mortgagor; that on the 28th of December, 1883, deeming themselves and their debts insecure, the defendants took the actual possession of the mortgaged property by virtue of their mortgages, and at once proceeded to advertise and sell the same, and on the 10th day of January, 1884, they sold said property at public auction to the highest bidder, and realized therefrom the sum of $2,450, which was the fair value thereof; that the amount due on the mortgages, for principal, interest, and stipulated attorney's fees, was $2,221.05, the costs of sale were $117.94, and the balance, after paying the amount due on said mortgages, interest, attorney's fees, and costs of sale, was $110.11. They further allege that before the sale on the 10th day of January, 1884, one George Stroud claimed to levy an attachment on all the interest of said Schmidt in said goods, and so notified the defendants, and that he now claims the right under such attachment to have and receive the balance of $110.11 so remaining in the hands of the defendants. They also allege that they are unable to decide who is entitled to receive the said balance, but they are ready and willing to pay the same as the court shall direct. They further allege that any right or title of the plaintiff, as assignee of Emil Schmidt, in and to said property, if he has any, was and is subject to their said chattel mortgage rights and the said rights of seizure and sale, and demand judgment in their favor.

The action was tried by a jury, and the court directed a special verdict. The questions answered by the jury were as follows: " (1) What was the value of the property taken and converted by the defendants? *Answer.* $4,500. (2) Did defendants sell them at public auction? *A.* Yes. (3) What did they sell for? *A.* $2,450. (4) What expense did

the defendants incur in seizing and caring for said property, aside from attorney's fees?  *A*. $206.11.  (5) After the giving of said chattel mortgages, and up to the time defendants took possession, did said Emil Schmidt fulfil all the conditions of said agreement?  *A*. Yes.  (6) Were the two mortgages obtained by the said mortgagees from the said mortgagor by fraud?  *A*. Yes.  (7) Were the said two mortgages executed by the said Emil Schmidt, and received by the said defendants, to hinder or delay creditors?  *A*. Yes.  (8) Was it understood between Emil Schmidt, the mortgagor, and the mortgagees, that the mortgagor might remain in possession of the mortgaged property and sell the same in the regular course of business as if no mortgage had been executed?  *A*. Yes.  (9) Did the mortgagor, with the assent and knowledge of the mortgagees, remain in possession of the mortgaged property and sell therefrom in the regular course of business as if no mortgage had been executed, until the defendants took possession?  *A*. Yes.  (10) Did the mortgagees know, when they took said mortgages, that the mortgagor supported himself and family out of said mercantile business?  *A*. Yes.  (11) Did the mortgagor, with the mortgagees' knowledge or consent, after giving these mortgages continue business as he did before the giving of these mortgages?  *A*. Yes.  (12) What was the amount due on the notes secured by said mortgages at the time of said sale of said property on the 10th of January, 1884?  *A*. $2,136.31.  (13) Was any portion of the indebtedness or interest thereon which said mortgages were given to secure, due at the time of the seizure or sale of said property.  *A*. No."

Upon this verdict the circuit court rendered judgment in favor of the plaintiff and against the defendants for the sum of $5,090 damages and $81.86 costs.  Before judgment was entered upon the verdict, the defendants moved for a new trial for errors in the charge of the judge, and for

Kloeckner, Assignee, etc. vs. Bergstrom and others.

errors in admitting testimony on the trial; and they also moved for judgment in their favor on the special verdict. Both motions were overruled and exceptions duly taken.

For the appellants there were separate briefs by *Charles W. Felker* and *John T. Fish*, and oral argument by *Mr. Fish.*

*Gabe Bouck*, for the respondent.

TAYLOR, J. The evidence in the case clearly establishes the fact that the defendants had taken the actual possession of the property described in their mortgages and in the complaint of the plaintiff, before the assignment to the plaintiff by the mortgagor, and that they held such actual possession claiming title to said property by virtue of their said mortgages when such assignment was made and when said plaintiff became the assignee of said Schmidt. The evidence and the findings of the jury raise the question whether an assignee of the mortgagor of personal property can maintain an action at law for conversion of the same by the mortgagee, on the ground that such mortgage is fraudulent and void as against the creditors of the assignee and mortgagor.

On the argument of the case in this court it was suggested by the learned counsel for the respondent that the judgment rendered on the special verdict in this case in favor of the plaintiff, the assignee, can be sustained on the strength of the fifth and sixth findings of fact, even though this court should be of the opinion that the assignee could not sustain his action on the general ground that the mortgages were given by the mortgagor and accepted by the defendants, the mortgagees, for the purpose of hindering and delaying the creditors of the mortgagor. We think there are two good objections to this suggestion of the learned counsel for the respondent. *First*, there is nothing in the record which discloses to us the fact that the circuit court based its judgment upon these findings, and from the whole course of the trial, and from the other findings, it

appears pretty clearly that the circuit court proceeded upon the theory that if the mortgages were given with the intent to defraud the other creditors of the mortgagor then the plaintiff was entitled to judgment. *Again*, the evidence given on the trial to sustain the fifth and sixth findings of fact is not so conclusive of the facts found as to justify us in sustaining the judgment upon them alone when we have nothing before us to show that the circuit court approved of such findings and based its judgment on them in directing judgment for the plaintiff. From what examination we have been able to give the evidence, we are far from being satisfied that there is any sufficient proof of such fraud in procuring the mortgages as would avoid them as against the mortgagor.

In determining this case, we shall treat it as it seems to have been treated by the counsel for the plaintiff and by the circuit court. If the judgment can be sustained at all, it must be sustained upon the seventh, eighth, ninth, tenth, and eleventh findings of fact, viz., that the mortgages under which the defendants seized and sold the goods were given with the intent to hinder, delay, and defraud the other creditors of the mortgagor. We shall not discuss the evidence for the purpose of ascertaining whether the findings are sustained by it, as we have come to the conclusion that if it were admitted that the evidence fully sustained such findings, yet, as the possession of the mortgaged property was not in the mortgagor at the time the assignment was made, no such title to the property passed to the assignee by the assignment as will enable him to maintain an action at law for the alleged conversion thereof.

The plaintiff's action is based upon his right to the possession of the property at the time he demanded the same of the defendants, and his only title to such possession is by virtue of his assignment. If, therefore, the mortgagor would not have been entitled to maintain this action for the

possession of such property after demand of the defendants, he not having made any assignment to the plaintiff, it seems to us very clear his assignee can have no such right.

It has been twice decided by this court that the assignee under a statutory assignment for the benefit of creditors cannot question a transfer of property which the assignor himself cannot question, no matter how fraudulent such transfer may be as to the other creditors of the assignor; and we are not disposed to reopen the controversy upon that question, believing that it is sustained upon principle and authority. See *Hawks v. Pritzlaff*, 51 Wis. 160.

It is urged that ch. 170, Laws of 1882, has changed the rule, and has given the assignee powers which he did not theretofore have. This is freely conceded, and there can be no question now that under the authority of that statute the assignee may institute proper proceedings to bring under his control the property of the assignor which has been assigned, mortgaged, or sold previous to the assignment with the intent of hindering, delaying, and defrauding his creditors — so far as may be necessary to protect the interest of the creditors who are represented by the assignee. But there is nothing in that statute which in any way changes the rule as to what property passes to the assignee by virtue of the assignment, nor as to the title which vests in him by virtue thereof.

In *Vernon v. Upson*, 60 Wis. 418, 422, Justice LYON says: " Ch. 170, Laws of 1882, makes the assignee the representative of creditors in respect to all fraudulent transfers of property by the assignor, and gives the assignee the right to maintain actions to avoid the same." Justice CASSODAY, in *Batten v. Smith*, 62 Wis. 92, 99, says: " The transfer of the safe to the father-in-law, and other property to other parties, alleged to have been made by the defendants in fraud of their creditors just prior to making the assignment, instead of having the effect of avoiding the assignment, were

by virtue of these recent enactments avoidable under the assignment. Nor would the omission of the property so fraudulently transferred from the inventory invalidate the assignment under sec. 1697. Assuming that such transfers were in fact fraudulent, yet the title to the property passed from the assignors, who thereby lost all right of reclaiming the same and hence were powerless thereafter to again transfer or even assign the property for the benefit of their creditors. This being so, they had no more right to include such property in their inventory than they had to include the property of any stranger. True, the assignee appointed by debtors is in duty bound, under the assignment, to avoid such fraudulent transfers; yet in doing so he in no sense represents the debtors. On the contrary, he, under the authority expressly given to him by enactments in question, represents the defrauded creditors."

We think these decisions give the proper construction to the act of 1882, and they show very clearly that the law of 1882 has not changed the effect of an assignment under the statute, so far as it relates to the title and right of possession which such assignment passes to the assignee.

Ch. 170, Laws of 1882, reads as follows: "In all cases of voluntary assignment for the benefit of creditors made under the provisions of chapter 80 of the Revised Statutes, the assignee or assignees shall be considered as representing the rights and interests of the creditors of the debtor or debtors making the assignment as against all transfers and conveyances of property which would be held to be fraudulent or void as to creditors, and shall have all the rights which such creditors would have to bring and maintain an action to avoid such fraudulent conveyances and transfers."

It seems very clear that this act did not provide, and was not intended to provide, that by the assignment the title to the property so fraudulently transferred by the assignor

before making such assignment should pass to the assignee under the assignment. The language, " and shall have all the rights which such creditors would have to bring and maintain an action to avoid such fraudulent conveyances and transfers," is inconsistent with the idea that the title to such fraudulently transferred property passed to the assignee. If the title passed to the assignee, then the assignment itself would avoid all such transfers without any action brought to avoid them. The assignee not having the title or the right of possession as against the party holding possession under a fraudulent transfer from his assignor, it is clear he cannot maintain an action for the conversion of such property by the party holding the title and possession.

The result of this case is a very strong argument against the right of the assignee to bring his action at law to recover the value of the property held by the alleged fraudulent grantee or mortgagee. A judgment for over $5,000 damages is recovered by the assignee, when, so far as the evidence discloses, he does not represent creditors, other than the defendants themselves, who have claims upon the property in his hands, whose debts exceed the sum of $1,800; and the evidence also shows that he has other assets to appropriate to the payment of these creditors and the expenses of his trust of over $1,000; showing that, so far as he represents the creditors of the assignor, his interest in the property taken by the defendants, if subject to the payment of the creditors, cannot very much exceed $1,000. By what right, as the representative of the creditors of the assignor, does the plaintiff claim of the defendants a judgment for the sum of $5,090 damages? Certainly the creditors he represents have no such claim against them, and by the statute the assignee can have no greater claim than the creditors.

We think that, under the act of 1882, the only action the

assignee can maintain against the fraudulent grantee, mortgagee, or assignee of the mortgagor, is an action in equity to avoid such fraudulent transfers and subject the property so fraudulently transferred, so far as may be necessary, to the execution of the trusts of the assignment, and no further. Such an action is adapted to the end sought in such case; and, as this case illustrates, the action at law clearly does not accomplish that purpose, but may become oppressive and unjust. Whether an assignee could maintain an action at law against a person holding property under a transfer, sale, or mortgage made under such circumstances as to be void within the meaning of ch. 349, Laws of 1883, is a question not free from doubt, and as the question is not in this case we are not called upon to decide it.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

See note to this case in 30 N. W. Rep. 118.— REP.