Valley Lumber Co. vs. Hogan.

VALLEY LUMBER COMPANY, Respondent, vs. HOGAN, Garnishee, Appellant.

*May 7 — May 23, 1893.*

(1) *Appeal: Exception to refusal to make finding.* (2) *Voluntary assignment: Who may maintain action to set aside fraudulent conveyance.*

1. Although there is no exception to the findings of the trial court, an erroneous refusal to find, duly excepted to, is available as ground for reversal.

2. Under our statutes an action to set aside a fraudulent or void conveyance made by a debtor before executing a general assignment must be prosecuted by the assignee or in his name, even though such conveyance is void only as to a limited class of the creditors. This rule applies to a chattel mortgage which is void only because of collusive delay in its filing and only as to those creditors who were misled thereby.

APPEAL from the Circuit Court for *La Crosse* County.

The defendant *Hogan* was summoned by the plaintiff in this action as garnishee of Donald A. McDonald and Charles M. McDonald, partners, etc., and as being indebted to them and having possession and control of property belonging to them. Judgment was rendered against the principal debtors, and the sole question was whether the defendant *Hogan* was liable to the plaintiff as garnishee upon the following facts, namely:

On the 14th of October, 1891, the defendants McDonald Bros. mortgaged lumber then in their possession, of the value of $11,000, to the garnishee, *Hogan*, to secure a debt of $10,000 and interest, and at the time it was agreed between them that the mortgage should not be put upon the record except on failure of McDonald Bros. to pay the notes it was given to secure at their maturity, thirty and sixty days from said date. The indebtedness to the plaintiff upon which its judgment was rendered against McDonald

Bros. was a loan of $5,000, obtained by them from the plaintiff November 23, 1891, in good faith, and upon the faith, strength, and representation that their property was not incumbered. On the 17th day of December, 1891, *Hogan* filed his mortgage and took possession of the property covered by it, and has ever since held it. The plaintiff had no notice of the existence of the mortgage when it made the loan to McDonald Bros., nor until it was so filed, and the mortgage was kept from the record to prevent any injury to the credit of McDonald Bros.

The court, as a conclusion of law upon these facts, held that the mortgage to the defendant *Hogan* of October 14, 1891, was void as to the plaintiff, and gave judgment charging the latter as garnishee for the lumber so taken by him under his mortgage. From a bill of exceptions it appears that McDonald Bros. executed to Geo. H. Ray a general assignment, which was filed in the office of the clerk of the circuit court of La Crosse county on the 17th day of December, 1891, four hours after the garnishee defendant so filed his mortgage and took possession of the lumber, and he requested the court to rule that the action should be brought only by the assignee, or in his name, for the benefit of creditors, and that the present action should be dismissed, but the court declined to so rule, and exception was taken by *Hogan.* The assignment was given in evidence, but no finding was made in respect to it, and no exception was taken to the finding. The garnishee appealed from the judgment.

*C. W. Bunn*, for the appellant.

For the respondent there was a brief by *E. C. Higbee*, and oral argument by *Mr. Higbee* and *Mr. J. J. Fruit.* They contended, *inter alia*, that it is only on the ground of equitable estoppel that the mortgage is invalid as against this plaintiff, and it is the only creditor in this position. The assignee could not maintain an action for and in the

interest of one creditor alone, and if he could the remedy given to him is not exclusive. *Brown v. Brabb*, 67 Mich. 17; *Powers v. C. H. Hamilton Paper Co.* 60 Wis. 23; *Vernon v. Upson*, id. 418; *Willis v. Bremner*, id. 622.

PINNEY, J.   1. It is contended on behalf of the respondent that, as the finding of the court contains all the facts necessary to charge the garnishee and does not make mention of the general assignment to Ray, and as no exception was taken to the finding, the record does not present any question for review, and the judgment must be affirmed. The facts stated in the bill of exceptions, and the request that the court should rule that the action should have been brought only by the assignee, as well as the exception to the refusal of the court to so rule or find, have been made and are a part of the record, as well as the finding of the court.   The request was substantially to find that upon all the evidence the action could not be maintained, and the exception to its denial presents the question whether upon the whole record the plaintiff was entitled to bring and maintain the action.   Although there may be no exception to the finding, an erroneous refusal to find may be excepted to and made available as ground for reversal of the judgment.

2. It is provided by the statute (ch. 80, sec. 1693, S. & B. Ann. Stats.) that "the circuit court, or the judge thereof in vacation, shall have the supervision of the proceedings in all voluntary assignments made under the provisions of this chapter, and may make all necessary orders for the execution of the same."   This chapter (ch. 80) provides, in substance, that the assignment, with bond of the assignee, together with an inventory of assets and list of creditors, is to be filed with the clerk of the circuit court of the county where the assignor resides.   Notice is to be given of the making of the assignment to all creditors of the assignor

Valley Lumber Co. vs. Hogan.

to file their claims by a day named or be barred from all dividends; and the merits of any claim may be litigated upon objections filed, and a trial by jury may be had, and an appeal taken from the order made thereon to the supreme court. Creditors not filing their claims may be barred, and debts to become due, as well as debts due, may be allowed with rebate of interest to the time of making dividend, which the assignee may pay, or it may be ordered by the court; and the accounts of the assignee are to be settled upon notice before the court, when the assignor may file his petition therefor and obtain a discharge from his debts as provided by ch. 385, Laws of 1889. Ch. 170, Laws of 1882, provides that in all cases of voluntary assignments made for the benefit of creditors · "the assignee or assignees shall be considered as representing the rights and interests of the creditors of the debtor or debtors making the assignment, as against all transfers and conveyances of property which would be held to be fraudulent or void as to creditors, and shall have all the rights which such creditors would have to bring and maintain an action to avoid such fraudulent conveyances and transfers." In *Vernon v. Upson*, 60 Wis. 423, it was said that this statute "makes the assignee the representative of creditors in respect to all fraudulent transfers of property by the assignor, and gives the assignee the right to maintain actions to avoid the same." Ch. 349, Laws of 1883, was enacted to prohibit debtors giving preferences, and to secure the equal distribution of property assigned for the benefit of creditors, and the assignee in any such assignment is granted "all the powers thereunder necessary to institute any action or proceeding to set aside and avoid any levy, sale, mortgage, hypothecation, lien, or other security" named in the act. In *Batten v. Smith*, 62 Wis. 92, 98, in speaking of the two acts cited, this court said that, "under the law as it now stands [1885] an assignee for the benefit

Vol. 85 — 24

of creditors stands in very much the same attitude and is
possessed of quite similar powers to an assignee in bank-
ruptcy under the act of Congress of 1867. By these two
recent enactments the legislature have manifested the pur-
pose of upholding general assignments so made for the
benefit of all the creditors of the assignor, and to prevent
all indirect methods of obtaining any preference through
the active agency of the debtor at any time during the
sixty days immediately preceding the assignment, and to
enable the assignee, as the representative of such creditors,
to avoid such illegal transfers, and to recover back for their
benefit the property so fraudulently disposed of by the as-
signor." In *Kloeckner v. Bergstrom*, 67 Wis. 197, and
*Charles Baumbach Co. v. Miller*, 67 Wis. 449, it was held
that an assignee for the benefit of creditors does not take
title to property fraudulently conveyed by the assignor
prior to the assignment, and that such assignee could not
maintain replevin or an action for the conversion of such
property, but could only attack such prior fraudulent trans-
fer or conveyance as the representative of the other credit-
ors by "an action in equity to avoid such fraudulent trans-
fers and subject the property so fraudulently transferred,
so far as may be necessary, to the execution of the trusts
of the assignment." In this condition of the law, ch. 292,
Laws of 1885 (S. & B. Ann. Stats. sec. 1693*b*), was enacted,
by which it is provided that, "whenever an insolvent debtor
has made any conveyance or transfer of his property, with
intent to hinder, delay, or defraud his creditors, or any
*conveyance, transfer, or charge* upon his property, which is
void by reason of being preferential *or otherwise*, and shall
thereafter make a general assignment for the benefit of his
creditors, if the assignee named in such assignment shall
neglect for sixty days after the delivery thereof to insti-
tute proper suit to vacate such fraudulent *or* preferential
conveyance, transfer, or charge, it shall be lawful for any

creditor of the assignor, having *first proved his claim* as required by law, to institute and prosecute to judgment any such suit in the name of the assignee and for his benefit, upon giving to the assignee bond in the sum of one thousand dollars, with sufficient surety, resident in this state, to hold said assignee harmless from said loss, costs, or expense to arise or accrue to him in case said suit shall be decided adversely to him. In case of recovery in such action the creditor so prosecuting the same shall be allowed out of the estate all reasonable costs and charges which he has paid or become liable for in respect to the prosecuting of said suits, the same being for the common benefit of the creditors; such costs and expenses to be determined by the court."

It will be seen from this general statement of the statutes that two general purposes are contemplated and sought to be accomplished, namely, the prohibition of preferences, and. an orderly, systematic administration of the estate of the assignor by an assignee under the direction and control of the circuit court, having plenary equity powers which may be exercised in a summary way subject to appeal, and the proceeding may culminate in a discharge of the assignor from his debts. The purpose of the proceeding is to get in all the property and property rights of the assignor, and exercise all the rights of his creditors in respect thereto, and convert the same into money, and distribute the same as equally as may be, through the assignee, under the authority of the court. It would be contrary to the plain purpose and spirit of the law for each individual creditor to attempt to litigate and enforce in his own name rights which the law contemplates shall be litigated and enforced only by or in the name of the assignee. Any other course would be productive of those preferences which the law is designed to prevent in the administration of the estate of the assignor, and would lead to a multi-

Valley Lumber Co. vs. Hogan.

plicity of suits and needless litigation, as well as embarrass-
ment and delay, by which the effects of the assignor would
be in a large degree wasted by unnecessary costs and
charges. It was not intended that the rights of the as-
signee, who represents the creditors as provided in the
statute, should be brought in conflict with rights asserted
by individual creditors, and that they should be allowed to
work at cross purposes to him, which would be productive
of conflict and confusion. The framers of the statutes in-
tended them to operate as a uniform system, and could not
have contemplated such a result. A careful consideration
of these acts, which are *in pari materia* and must there-
fore be construed together and as constituting a consistent
system, has satisfied us that the important rights of ac-
tion which the assignee may exercise under this statute
were intended to be exclusive, and not cumulative to those
of individual creditors, and which, if exercised and put in
use, would so far defeat the plain purposes of the statute.
Evidently the right of action of the assignee must take the
place of and exclude that of the several creditors in these
respects. They cannot be considered as consistent or con-
current rights, for the right of action of the creditor looks
to the application of the fruits of his action exclusively to
the payment of his own debt, and to obtaining an advan-
tage and priority over all other creditors; and the results
of the action of the assignee are required to be applied to
the benefit of the creditors generally. The rights of the
individual creditor are fully secured against want of action
by the assignee, by allowing the creditor, upon the terms
prescribed in sec. 1693b, to institute and prosecute to judg-
ment the proper action in the name of the assignee; and
this of itself implies a denial of the right to sue in respect
to the causes of action specified in the statute in his own
name.

It is, however, urged that this construction should be

allowed only where the cause of action will, if put in force, operate to the common benefit of all the creditors; and that, as the chattel mortgage in question is void only as to the plaintiff and others who became creditors of McDonald Bros. while it was collusively withheld from record, and so affects only a class, or perhaps but one, of their creditors, therefore the case is not within the statute. The same reasons exist for a fair and equal application of the provisions of the act and distribution of the effects to be realized for a class as for all the general creditors of the assignor, and transactions which are void as to the class, as preferential or otherwise, are clearly within the meaning of the law. The principal or greater power contains the less. Nor should the operation and effect of this remedial act be unduly narrowed and restrained by the provisions added in respect only to the costs of actions prosecuted by a creditor in the name of the assignee, and not to actions prosecuted by the assignee. As a matter of course, the assignee will be allowed the costs of all actions prosecuted by him out of the general fund, whether successful or not, and, if a special fund results or is increased, then out of that fund. A creditor can have costs only in case he is successful, and out of the general fund if it is increased; and if the result is for the benefit of a less number than all the creditors, then it is within the spirit and meaning of the act that the costs shall be charged to the fund which is the result of the action.

It is argued that the present case is not within the statute, because it presents a question of estoppel merely, resulting in favor of the plaintiff by the collusive withholding of the mortgage from McDonald Bros. to *Hogan* from the record, and the case of *Standard Paper Co. v. Guenther,* 67 Wis. 101, is relied on. But it is evident that the estoppel in that case was founded on and by reason of fraud. It was held in *Hungerford v. Earle,* 2 Vern. 261, approved by

Chancellor KENT in *Hildreth v. Sands*, 2 Johns. Ch. *48, "that a deed not at first fraudulent may afterwards become so by being concealed, or not pursued, by which means creditors are drawn in to lend their money;" and *Smythe v. Sprague*, 149 Mass. 312, cited by respondent's counsel, recognizes the law to be that a mere failure, not collusive, to record a deed, renders it constructively fraudulent as to subsequent purchasers or creditors. That the facts may give rise to a personal right of estoppel falls short of showing that the collusive withholding of the chattel mortgage from record did not render it fraudulent as to all creditors misled thereby, so as to bring it within the category of conveyances, transfers, or charges upon the property of the assignor, "void by reason of being preferential *or otherwise*," and which are mentioned in the statute as "*fraudulent* or preferential." *Blennerhassett v. Sherman*, 105 U. S. 100, 117; *Blackman v. Preston*, 123 Ill. 381, 385; *Bank of U. S. v. Housman*, 6 Paige, 526.

We therefore hold that the cause of action in question could be prosecuted only by the assignee, or in his name, for the benefit of creditors. The conclusion at which we have arrived is supported by decisions in other states under statutes of similar scope and purpose (*Root v. Potter*, 59 Mich. 498; *Angell v. Pickard*, 61 Mich. 561; *Sweetzer v. Higby*, 63 Mich. 13; *Minn. Thresher Mfg. Co. v. Langdon*, 44 Minn. 39; *Baker v. Pottle*, 48 Minn. 479), and is not, we think, in conflict with *Brown v. Brabb*, 67 Mich. 17.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the action as to the appellant *Hogan*.