## In re SANDERLIN.

(District Court, E. D. North Carolina. July 24, 1901.)

1. BANKRUPTCY—PARTNERSHIP—LIENS.

Mortgage given by a partnership on its property is not affected by bankruptcy proceedings against one of the partners alone, though, after the giving of the mortgage, the firm was dissolved, and such partner took its assets and assumed its liabilities.

2. SAME—COSTS OF SALE.

Where a firm gives a mortgage on its property, and afterwards is dissolved, one of the partners taking its assets and assuming its debts, and bankruptcy proceedings are then had against such partner, costs of sale should first be paid from the proceeds of the property, and the mortgage then be paid, instead of the mortgagee being charged a proportionate part thereof.

3. SAME—PROCEEDS OF SALE—APPLICATION.

Where a firm, after giving a mortgage, is dissolved, one of the partners taking its assets and assuming its debts, and bankruptcy proceedings are then instituted against him, in the course of which the property is sold,

the balance after paying the mortgage should be retained by the trustee as part of the estate in bankruptcy of such partner, as successor to the firm, and not paid to the unsecured debtors of the firm.

**4. SAME—PREFERENCE.**

A mortgage, within four months of an adjudication in bankruptcy, to secure a pre-existing debt and a cash consideration, is void as a preference to the extent of the prior indebtedness, and valid only for the present cash consideration.

## In Bankruptcy.

B. J. Sanderlin was duly adjudged a bankrupt, and a trustee appointed at a meeting of creditors. The trustee filed a petition, alleging—which allegations are admitted—that within four months of bankruptcy proceedings B. J. Sanderlin and John P. McMillan, trading as Sanderlin & McMillan, executed a mortgage on a certain sawmill plant, fixtures, etc., eight miles from McKee's Cut, Bladen county, to secure a debt of $1,500 due by said firm. On the same day (September 13, 1900) B. J. Sanderlin also executed a note to McNair & Pearsall for $2,500, and, to secure the same, a mortgage on a sawmill plant, fixtures, etc., about two miles from Clarkton, N. C.; that McNair & Pearsall were not parties to the bankruptcy proceedings, but claimed a lien on the property of the bankrupt, and it would be to the interest of all parties to have the property covered by the mortgages sold free of liens; and praying for this purpose that McNair & Pearsall be made parties, etc. An order was entered and served, when McNair & Pearsall filed an answer admitting the allegations of fact in the trustee's petition, claiming the firm of Sanderlin & McMillan had not been adjudged bankrupts. The property conveyed in the mortgage to secure the $1,500 debt was the property of the firm, and their claim thereto or thereon is a valid claim. Admitting the facts as alleged as to B. J. Sanderlin, the answer says that the same was a bona fide transaction for a valuable consideration, and at the time the note and mortgage were executed they believed Sanderlin was solvent. They had no reasonable cause to believe that Sanderlin intended to give them a preference over other creditors. They claim a prior lien on said property, and submit themselves and their claims to the jurisdiction of this court. Claimants further allege that the personal property allotted to the bankrupt as a personal property exemption is included in that covered by the Sanderlin mortgage, and subject to their lien thereunder. The referee finds the following additional facts pertinent to the questions presented which do not seem to be questioned: The consideration of the Sanderlin & McMillan mortgage was $1,282.10 cash, and the balance a debt due McNair & Pearsall. No proceedings in bankruptcy have been commenced against Sanderlin & McMillan or John R. McMillan. Subsequent to the date of the mortgage, the firm of Sanderlin & McMillan was dissolved, Sanderlin agreeing to take the firm assets and pay the firm debts. Prior to the execution of the Sanderlin & McMillan mortgage, there were two liens on the property, the validity of which were admitted. This property was sold by the trustee for $2,308.50. The consideration of the mortgage of B. J. Sanderlin for $2,500 was $805.56 cash, and the balance an account due by B. J. Sanderlin to McNair & Pearsall. This property was sold by the trustee for $2,605.50. The referee held that out of the proceeds of sale of the property covered by the Sanderlin & McMillan mortgage the valid liens thereon referred to should first be paid, then the amount of the mortgage to McNair & Pearsall, and, if any balance remained, it should be applied to the unsecured claims against Sanderlin & McMillan, each payment to be charged with its proportionate part of the expense of sale; that the mortgage of B. J. Sanderlin for $2,500 is a valid lien to the extent of the cash consideration of $805.59, and that the part of said consideration which represents the pre-existing debt is upon the same footing as other unsecured claims, and can be proved in the mode prescribed for the proof of unsecured claims; that from the said $805.59 and interest should be deducted such part of the expenses incident to making the sale of the property conveyed in the mortgage as $805.54 bears to the total proceeds of sale, $2,605.50. To the rulings of the referee both parties excepted.

Iredell Meares, for creditors.

McNeill & Bryan, for Pearsall & McNair.

PURNELL, District Judge (after stating the facts). The questions presented by the exceptions are not new. Most of them have been settled by decisions. Claimants having submitted their claims, no question of jurisdiction can arise. Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. ——, 5 Am. Bankr. Rep. 623. Firms or partnerships and the individuals composing such firms or partnerships are distinct legal entities, and proceedings in bankruptcy by or against one do not of necessity involve the other. A firm, as such, may be bankrupt, and the individuals composing such firm solvent, and not bankrupt. In re Meyer, 3 Am. Bankr. Rep. 559, 39 C. C. A. 368, 98 Fed. 976; In re Barden (D. C.) 4 Am. Bankr. Rep. 31, 101 Fed. 553; Strause v. Hooper (D. C.) 5 Am. Bankr. Rep. 225, 105 Fed. 590; Coll. Bankr. (3d Ed.) 72, 73. This proceeding was against B. J. Sanderlin alone, and in no way involved the acts or assets of Sanderlin & McMillan or J. R. McMillan. The mortgage made by Sanderlin & McMillan to McNair & Pearsall, and the prior liens on the property covered by the mortgage, are therefore not affected by the proceedings in bankruptcy, except in so far as an equitable division of the costs of selling the property. Both claims are valid, in no sense a preference, and this court administers the proceeds of sale to ascertain the interest of the bankrupt in the excess, if he has such interest, and to have such excess, if any there be, paid to the creditors of the bankrupt. If the court had not interfered, if the holders of the liens and mortgage had been permitted to sell the property, they would have paid out of the proceeds of sale first the cost of making the sale, then the liens according to priority, then the debt secured by the mortgage, and then the surplus to the mortgagor. This is according to the terms of the mortgage (which adds to the cost of sale a reasonable fee to an attorney, but such fee cannot be charged against the estate), and the usual practice in such cases. Under the dissolution agreement, Sanderlin having taken the assets and assumed the liabilities of the firm, he would, under the most favorable circumstances, have been entitled to the surplus after paying the cost and the claims against the property. Creditors can claim no more. Out of the proceeds the trustee will therefore pay the costs of making the sale first, then the two liens according to priority, then the mortgage debt and interest, and the surplus, if any, will be retained as a part of the bankrupt estate.

The exception to the report of the referee "that the sums so going to the mortgage and lien creditors should be charged with such proportionate part of the expenses incident to making such sale as their amount bears to the total proceeds of sale" is sustained. The decision of the referee that the proceeds of sale of the property should be applied to the payment of the liens, and then to the payment of the McNair & Pearsall mortgage, is affirmed; but this application can only be made after paying the cost of sale. The balance, if any, will be retained by the trustee as a part of the estate

in bankruptcy of B. J. Sanderlin, as successor to Sanderlin & Mc-Millan, and not paid, as the referee directs, to the unsecured creditors of Sanderlin & McMillan. The court is not administering the estate of that dissolved firm.

The second exception to the finding of the referee—that he erred in holding the mortgage executed by B. J. Sanderlin to McNair & Pearsall is a valid lien upon the proceeds of sale of the property conveyed therein ($2,605.50) to the extent of the cash consideration, $805.59, and interest, and the part of the consideration which represents the pre-existing indebtedness is upon the same footing as other unsecured claims, and can be proved as other unsecured claims—is overruled, and the finding of the referee affirmed. The former decision in Re Ratliff (D. C.) 5 Am. Bankr. Rep. 713, 107 Fed. 80, and the reasoning therein relied on in the argument has, since that cause was decided, been passed upon by the supreme court in Pirie v. Trust Co. (referred to in the opinion as pending on appeal), and the supreme court holds:

"Payment by a debtor on account and in the ordinary course of business, within four months of the filing of petition in bankruptcy by or against him, though made and received innocently, the debtor not intending to give a preference, and the creditor not knowing or having reason to believe that the bankrupt is insolvent at the time of the payment, are nevertheless preferences under the bankruptcy act, which must be surrendered if the creditor so paid desires to participate pro rata in the distribution of the bankrupt estate. A preference which has been received innocently by a creditor may be retained by him, if he so elects; but he cannot be permitted to prove his claim in the bankruptcy case. Where creditors had, within four months, received payments on account amounting to $1,300, and upon bankrupt's adjudication proved their claim for the balance due them, and a dividend amounting to $464 was allowed and paid thereon before the trustee discovered creditors had been given preferences within the four months, and the trustee, upon such discovery, filed in the bankruptcy court a petition for a reconsideration of the claim, and its rejection on the ground of such preferences, and for the recovery of the dividend paid, and the prayer was allowed, but the creditor contends that in view of section 23b, Bankr. Act, the court erred in compelling him to repay the amount of dividends so received: Held, the proceedings were not a suit within the meaning of that section, and the order of the court requiring the repayment of the dividend was properly and legally made." 181 U. S. ——, 21 Sup. Ct. 906, 45 L. Ed. ——, 3 Nat. Bankr. N. 566.

True, this decision was by a divided court, the chief justice and three associate justices dissenting; but this court must follow the decision.

The decision of the referee that the mortgage is a valid lien on the proceeds of sale to the extent of the cash consideration is not excepted to, and is correct. Tiffany v. Lucas, 15 Wall. 421, 21 L. Ed. 198; In re Cobb (D. C.) 3 Am. Bankr. Rep. 129, 96 Fed. 821; Coll. Bankr. (3d Ed.) 355, and cases cited.

As to the pre-existing debt it was a preference which is void. The same rule hereinbefore set out for the payment of costs applies to the costs of sale of the property covered by the mortgage by B. J. Sanderlin to McNair & Pearsall, and the exception to the ruling of the referee charging the fund of $805.59 due McNair & Pearsall with a pro rata part of the cost as the $805.59 bears to the proceeds

of sale is sustained. The costs of sale will be paid from the fund first, then the debt of $805.59 and interest will be paid in full, the balance to be held as a part of the estate of B. J. Sanderlin in bankruptcy for distribution under the further order of the court of bankruptcy. The third exception—"that the referee erred in not holding that the surplus after paying the debts of McNair & Pearsall should be charged with the entire expenses in this cause"—is overruled. :