## In re NEELY.

(Circuit Court of Appeals, Second Circuit. January 7, 1902.)

### No. 46.

1. BANKRUPTCY—REPLEVIN—JUDGMENT AGAINST TRUSTEE — DAMAGES FOR DETENTION—PRORATING—ACT OF BANKRUPT.

Plaintiff sold books to N., and on October 17, 1899, brought replevin in a state court to recover possession for false representations as to solvency. Part of the books were in storage, and under the state statute possession could not be given plaintiff except by consent or order of court after proof of title. Four days later, N. was adjudged bankrupt, and the suit restrained by the federal court. His trustees qualified November 15th, but took no steps to defend until the court, on plaintiff's petition, in March, 1900, authorized them to do so, and vacated the restraining order. It being apparent that the cause could not be reached for trial until autumn, plaintiff offered to refer the cause, or to sell the books for the benefit of the action, if the trustees would permit their removal; but both offers were declined. The case came on for trial February 11, 1901, and plaintiff recovered judgment for possession, with $1,080 damages for detention, and $647 costs. *Held* error for the federal court to enjoin the judgment and direct the damages to be treated as a claim against the bankrupt and prorated with other claims, while permitting the costs to be paid in full, the detention not being the bankrupt's act except for four days, but the act of his trustees, and plaintiff being, therefore, entitled to payment in full.

2. SAME—WANT OF ACTUAL POSSESSION—EFFECT.

The fact that the trustees never had actual possession of the books was not ground for prorating the damages, it being their action and that of the federal court which prevented plaintiff from getting possession.

3. SAME—REFUSAL BY PLAINTIFF TO TRY TITLE BEFORE REFEREE IN BANKRUPTCY—EFFECT.

The fact that plaintiff refused to try title before the referee in bankruptcy was not ground for prorating the damages, there being no reason why plaintiff should consent to such proceeding.

4. SAME—REFUSAL TO GIVE ADDITIONAL REPLEVIN BOND—EFFECT.

The fact that plaintiff declined to give an additional replevin bond to the trustees as a condition precedent to putting the books on the market for the benefit of the action was not ground for prorating the damages, the law not requiring any additional bond.

5. SAME—VALUE OF PROPERTY—EFFECT.

The fact that the books were of considerable value, and the case such as to justify the trustees in requiring plaintiff to prove title, was not ground for prorating the damages.

Petition to Review an Order of the District Court of the United States for the Southern District of New York.

This is a petition to review an order enjoining petitioner from issuing execution on a judgment entered in the supreme court of the state of New York March 13, 1901, against the trustees in bankruptcy of F. Tennyson Neely.

See 108 Fed. 371.

Henry W. Taft, for petitioner.
Duncan Edwards, for trustees.
Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. On October 17, 1899, the Syndicate Publishing Company, a Pennsylvania corporation, brought an action of replevin in the supreme court of the state of New York against Neely to recover possession of 2,000 sets of a book called the "Encyclopædia Dictionary," upon the ground that they had been obtained on credit by false and fraudulent statements made by the defendant concerning his financial condition, and that upon discovering such facts the plaintiff had rescinded the credit and sale. The summons, complaint, affidavit, and requisition on replevin, including a bond in the sum of $13,000, were placed in the hands of the sheriff. That officer took into his own possession from Neely's actual possession 272 sets. There were 1,300 sets on deposit with a storage warehouse company, which the sheriff also levied on by serving a notice under the state act of 1895 (chapter 633). By the terms of that act, goods thus levied on could not be removed from the warehouse except by consent or by the order of the court after proof of title. Four days after such levy, and on October 21, 1899, Neely filed his petition, and was adjudged a bankrupt. On October 23, 1899, the district judge made an ex parte order restraining the prosecution of the action of replevin and various other actions pending against the bankrupt, and enjoining the sheriff from in any manner interfering with the property in question, which order was duly served on the plaintiff's attorneys and on the sheriff. On November 15, 1899, trustees of the bankrupt's estate were appointed and qualified. They took no steps to intervene or defend the suit until after the plaintiff in such suit had petitioned the court to direct them to do something, when an order was made March 20, 1900, authorizing them to intervene and defend if so advised, and thereupon vacating the order restraining the prosecution of the replevin suit. The trustees did intervene, and served an answer to the complaint in such suit denying all of its allegations and challenging the validity of the levy in replevin. At the same time they served a separate notice demanding the return of all goods replevied, or for the sum of $8,000 damages for their detention. The restraining order being vacated, petitioner's counsel placed the cause on the calendar, and took the necessary steps to secure a preference on the trial calendar (pursuant to state statute). When it was apparent that the cause could not be reached for trial before autumn, petitioner made an offer to refer the cause, which was declined, and also offered, if defendants would consent to an order under the warehouse act, to take the goods and place them on the market for the benefit of the action. This also was declined. The replevin suit came on for trial in the state court February 11, 1901. The plaintiff's right to recover was vigorously disputed by the attorney for the trustees, but a verdict was rendered in plaintiff's favor awarding plaintiff possession of 1,572 sets of books, valued at $7,948.50; also $1,080 damages for detention thereof (being the

amount of storage thereon from October 17, 1899, to the time of trial, $450, with interest at the rate of 6 per cent. per annum, amounting to $630, and to $1,080 in all), besides $647.31 costs and disbursements; amounting in all to $1,727.31. The district court thereupon enjoined the plaintiff in that suit from enforcing this judgment against the trustees. It directed that the costs—$647.31—should be paid in full, but as to the $1,080 directed that it should be treated as a claim against the bankrupt, and paid pro rata with the claims of other creditors.

Why the costs should be paid in full if the damages were to be prorated is not apparent. There is no logical difference between the two items. The various reasons suggested in the opinion and in brief and argument here for making such disposition of the case do not seem to us persuasive. It is said that the detention was the act of the bankrupt. This is inaccurate. For a period of four days from October 17th to October 21st he was responsible for their detention. Had he admitted the rightfulness of plaintiff's claim, the state court could have disposed of the cause so that the warehouse company would have delivered the books to the true owner. After Neely became a bankrupt, however, he could no longer control the situation. Nothing that he could do would release the books. His creditors, represented by trustees, and protected and controlled by the district court, were the only ones who could, by ceasing further to oppose a just claim, put a stop to the running up of a bill for expenses. It is said the trustees never had possession of the goods, and never detained them. Whether they had actual possession is immaterial. Their action and the action of the district court prevented the owner from getting them when he was entitled to them.

It is said that the plaintiff in the replevin suit refused to consent to become a party to some proceeding before a referee in bankruptcy to try the title. We know no reason why it should. It had brought a proper action in a proper court, which had jurisdiction, to which action the trustees, with the assent of the district judge, had been made parties, and in which all the issues could be fully determined. It is also said that plaintiff declined to give an additional bond to the trustees as a condition precedent to their consent to a delivery of the books to be put on the market for the benefit of the action. But no law required them to give any other bond than the one in replevin.

It is said that the property claimed was of considerable value, and the case was such as to justify the trustees in requiring the plaintiff in the replevin suit to show title. This is a perfectly good argument in support of the proposition that, as between the bankrupt's creditors and the trustees, the latter are entitled to charge the estate for any expenses they have incurred in the litigation, without being surcharged for any items on the theory that they were improvident. But it is difficult to see how it can be supposed to support the proposition that the individual who all along had good title to the property should be required to contribute to the expenses of the estate in conducting a litigation in which that individual was successful. And there would be such a contribution, if

the damages sustained by reason of a delay caused by the trustees' defense of the suit were not paid wholly by them, but were left to be borne in part by the successful party.

Reference is made to Norton v. Switzer, 93 U. S. 355, 23 L. Ed. 903, but in that case the judgment was on a claim against the bankrupt himself. Here no part of the $1,080 represents any claim against the bankrupt (except the proportionate part for four days' detention). It is an amount awarded to reimburse the owner of the property for expenses which the conduct of the trustees has caused him to incur.

It is no doubt true that out of the 472 days during which the books were detained (October 17, 1899, to February 11, 1901) 4 days' detention was attributable to the bankrupt; but the case seems one for the application of the maxim "De minimis non curat lex," especially in view of the litigation which the petitioner has had to persist in since it established its title to the property.

Because we have discussed and disposed of this cause on the merits, it is not to be assumed that we have decided all the propositions of law which it presents in favor of the respondents, nor that we are prepared to hold that, when a suit is pending against a bankrupt in a state court of competent jurisdiction, and, with the assent of the bankruptcy court, the trustees intervene, and are made parties in his place, and thereafter contest the suit to final judgment adverse to themselves in the state court, the bankruptcy court may thereafter enjoin execution, open the judgment, and alter the verdict.

The order of the district court is reversed, and the trustees ordered to pay the $1,080, with interest.