## McNAIR et al. v. McINTYRE et al.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1902.)

### No. 417.

1. BANKRUPTCY—PARTNERSHIP—LIENS.

Validity of mortgage given by partnership is not affected by bankruptcy proceedings within four months thereafter against one of the partners alone.

2. SAME—COSTS OF SALE.

The proceeds of property of a bankrupt subject to liens should first be charged with the costs of sale, and the liens be then paid out of the remainder, according to their priority.

3. SAME—PREFERENCE.

A creditor given a mortgage for past indebtedness within four months of bankruptcy proceedings against the debtor may retain the preference, though brought into the proceedings in invitum; no claim being made against the general estate, and the mortgage being executed with no intent to give a preference and no knowledge of the insolvency.

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of North Carolina, at Wilmington, in Bankruptcy.

E. K. Bryan, for petitioners.

Iredell Meares, for respondents.

Before GOFF and SIMONTON, Circuit Judges, and JACKSON, District Judge.

SIMONTON, Circuit Judge. This case comes up upon a petition to superintend and revise in matter of law proceedings in the district court of the United States for the Eastern district of North Carolina, sitting in bankruptcy. 109 Fed. 857. The facts of the case are these: The firm of McNair & Pearsall were creditors of the firm of Sanderlin & McMillan. On 13th of September, 1900, Sanderlin & McMillan executed to McNair & Pearsall a chattel mortgage to secure a sum of $1,500, of which $1,282.10 was cash then lent, and the remainder an amount then due by Sanderlin & McMillan to the mortgagees on open account. The personalty mortgage was a sawmill plant at McKee's Cut, on the Carolina Central Railroad, in North Carolina. The mortgage was duly recorded. On the same 13th September, 1900, J. B. Sanderlin, one of the firm of Sanderlin & McMillan, executed a chattel mortgage to McNair & Pearsall, securing the sum of $2,500, of which sum $805.52 was cash then advanced to him, and the remainder was the amount of an open account at that date due by Sanderlin to the mortgagees. This also was duly recorded. The firm of Sanderlin & McMillan was dissolved in October, 1900. In January, 1901, within four months of the execution of these mortgages, Sanderlin was adjudged a bankrupt. Stephen McIntyre was made trustee of the estate. The trustee took possession of all the property in which Sanderlin had an interest, including the property covered by these two mortgages, and under proceedings instituted by him in the bankrupt court, to which he made McNair & Pearsall parties, sold the mortgaged property free of all liens. Up

to the date of these proceedings McNair & Pearsall had not appeared in the bankruptcy court, and had not made any proof of claim.

The question made is as to the disposition of the proceeds of the sales of the mortgaged property. The property mortgaged by the firm of Sanderlin & McMillan brought $2,308.50. That mortgaged by Sanderlin alone brought $2,605.50. The referee proposed to pay out of the proceeds of the first-named mortgage two small liens in existence at its date held by other parties, and then to apply the remainder to the payment of the chattel mortgage given by Sanderlin & McMillan, which firm has not been adjudic ted bankrupt. He also proposes to charge against each lien so paid the proportionate part of the expenses of sale as its amount bears to the total proceeds.

The referee finds, and it is not disputed, that the Sanderlin mortgage was executed in good faith by him, not intended as a preference, and without knowledge on his part or on that of the mortgagees that he was insolvent. He recommends that so much of the mortgage debt as secures the $805.59 advanced in cash be paid, with its interest, out of the proceeds of sale; that the remainder of the proceeds go into the general estate, and that McNair & Pearsall prove the remainder of their claim against the bankrupt estate as general creditors. He makes the same suggestion with respect to the proportionate amount of costs as he made as to the proceeds of the first-named mortgage. Upon review of his report by the district court, the action of the referee in recognizing the validity of the mortgage of Sanderlin & McMillan was affirmed. In this we concur with the court below.

The ruling of the referee with regard to the proportionate division of the costs was reversed, the court ordering that the entire costs be first paid out of the fund, and that the liens be paid out of the remainder, according to their priority. This is the most simple way of settling the costs, and the ruling on this of the court is affirmed.

The district court sustained the referee in his ruling that only $805.59 be paid to McNair & Pearsall out of the proceeds of the Sanderlin mortgage, and that for the remainder of their claim they come in only as general creditors. The surplus proceeds of sale are placed by him in the general fund. It having been found without question that neither the mortgagor nor the mortgagees were aware of the insolvency of Sanderlin, and that the mortgage was executed in good faith, with no intent to give a preference, we are of the opinion that the referee and the court erred in this conclusion. The law upon this subject is declared in Pirie v. Trust Co., 182 U. S. 446, 21 Sup. Ct. 906, 45 L. Ed. 1171. That case decides that, although a creditor may have received a preference within four months of the adjudication of bankruptcy, he may retain it if he did not have cause to believe that it was intended as a preference or with knowledge of the insolvency. If he retain it, however, he loses all claim against the estate of the bankrupt.

It would seem to be a corollary from this case that, if he insists upon his claim against the general estate, he will be held to have waived his lien. In the case at bar, McNair & Pearsall made no such claim. On the contrary, they disclaim all intention so to do.

They clearly are entitled to hold their lien. It is true that they have come into this case. But this was only in obedience to the order of the court making them .parties by proceedings in invitum. These proceedings were instituted for the express purpose of selling the mortgaged property free of lien, and, of course, of transferring the lien to the proceeds. McNair & Pearsall came in for this purpose, insisting on their lien. In this respect the ruling of the district court is reversed.

The case is remanded to that court, with instructions to carry out the points settled by this judgment.