### In re ANTIGO SCREEN DOOR CO.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1903.)

#### No. 779.

1. COURTS—JURISDICTION—DISPOSITION OF FUND IN COURT.
   Any court having in its possession a fund about which there is a controversy has inherent jurisdiction and power to determine such controversy, to the exclusion of every other court.

2. BANKRUPTCY—JURISDICTION OF COURT—MODE OF REVIEW.
   Where a mortgagee, in possession of property of a bankrupt, surrenders it to the trustee, reserving the right to assert his lien against the proceeds, such proceeds are held by the court as assets of the bankrupt estate, and in dealing with the fund it acts as a court of bankruptcy, and its action on the claim of the mortgagee is subject to review in matter of law by the Circuit Court of Appeals on petition therefor.

---

¶ 1. Jurisdiction as affected by possession of the subject-matter, see note to Adams v. Trust Co., 15 C. C. A. 6.

**8. SAME—VALIDITY OF CHATTEL MORTGAGES—FOLLOWING LAW OF STATE.**

In determining the validity of chattel mortgages, a court of bankruptcy is governed by the settled law of the state in which they were given.

**4. SAME—REVIEW IN MATTER OF LAW.**

On a petition for review in matter of law, the Circuit Court of Appeals is not at liberty to challenge the facts, or an inference of fact, found by the court below.

**5. SAME—VALIDITY OF CHATTEL MORTGAGES—RIGHT OF TRUSTEE TO ATTACK.**

Under the law of Wisconsin, as settled by its Supreme Court, that a chattel mortgage is rendered fraudulent in fact by an agreement giving the mortgagor the right to make sale of the mortgaged property for his own benefit, and voidable by general creditors or a general assignee of the mortgagor, notwithstanding possession taken by the mortgagee, a trustee in bankruptcy may assert the right of creditors to the property as against the mortgagee.

**6. SAME—FAILURE TO RECORD.**

Where, as under the law of Wisconsin, the failure of a chattel mortgagee to file his mortgage or take possession of the property, without fraud or collusion, renders the mortgage voidable only as to subsequent creditors or those who acquire a lien, the taking possession by the holder of an unrecorded mortgage before the filing of a petition in bankruptcy against the mortgagor validates the mortgage as against general creditors, and it cannot be attacked in their behalf by the trustee.

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Wisconsin.

In Bankruptcy. On petition of the Langlade County Bank.

The Antigo Screen Door Company, a corporation of the state of Wisconsin, had its principal office and place of business in the city of Antigo, Wis., and its sawmill in the town of Ackley, in Langlade county. It was adjudged bankrupt upon petition of its creditors, filed September 11, 1899, and a trustee thereafter appointed. On November 25, 1898, the bankrupt executed to the Langlade County Bank its chattel mortgage upon "all furniture manufactured or in process of manufacture, all glass used in or about furniture, all furniture hardware, all wire cloth, all screen doors, and all snow shovels" contained in its warehouse in the city of Antigo. The mortgage was to secure its note of $3,000 of that date, payable in 90 days, with interest, given for that much money then loaned to the company and used in payment of labor claims owing by it, and not in payment of any obligation then owing to the bank. The mortgage was filed in the office of the city clerk of the city of Antigo on November 30, 1898. On February 7, 1899, on March 27, 1899, on May 26, 1899, and on September 7, 1899, certain affidavits made on behalf of the bankrupt were filed and attached to the mortgage on file, showing the amount of stock sold, the amount of additions to the stock, and that no payment had been made on account of the mortgage, with other averments required by law. These show sales aggregating $21,368, and additions to the stock aggregating $23,805. The mortgage is said to have been made pursuant to section 2316b of the Revised Statutes of the State of Wisconsin of 1898. On May 26, 1899, the Langlade County Bank loaned to the bankrupt the further sum of $2,500, to be used, and which was used, by the company in payment of labor claims due and owing to its employés, and not in paying any obligation to the bank. For this loan a note for the amount was given, payable in 90 days, with interest, and, to secure the same, a chattel mortgage upon certain lumber and logs at the company's mill in the town of Ackley, the lumber in pile to be conspicuously marked on each pile "L. C. B." (meaning Langlade County Bank), and the lumber which might be sawed out of the logs to be marked in like manner. This mortgage was

---

¶ 3. State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548, Wilson v. Perrin, 11 C. C. A. 71, and Hill v. Hite, 29 C. C. A. 553.

¶ 6. See Bankruptcy, vol. 6, Cent. Dig. § 277.

filed in the office of the town clerk of the town of Ackley, being the town where the personal property and where the mill of the company were situated; but it was not filed with the city clerk of the city of Antigo, where the company had its principal office.

No part of either debt to the bank having been paid, on September 7, 1899, the bank took possession of the property supposed to be covered by both chattel mortgages, and duly advertised the same for sale. This was four days before the filing of the petition in bankruptcy. Afterwards, and before the sale, an arrangement was effected between the bank and the trustee of the bankrupt, with the approval of the bankruptcy court, by which the property was turned over to and sold by the trustee, and the proceeds covered into the treasury of the bankruptcy court, where it now is, with the agreement that the proceeds should stand for the property, and that the bank might in the bankruptcy court pursue its claim against the fund with like effect as if it had retained and sold the property. Thereupon the bank filed its petition in the bankruptcy court, praying that it might have of the fund realized the amount of the two mortgages, with interest, and certain expenses for custody and insurance to which it has been subjected. The court below held both mortgages void. Upon a rehearing it was shown that a small portion of the property, mortgaged November 25, 1898, remained on hand when possession was taken, admittedly to the amount of $287.05. The bank claimed that the proof showed an additional amount of $665.68, but this was disputed by the trustee. The court, however, did not pass upon this contention, holding the mortgage void in toto. On the 14th of March, 1901, the court entered an order by which it adjudged that the mortgage of November 25, 1898, "is void against the trustee by reason of the understanding inferred from the acts of the parties giving the mortgagor the right to make sale from the mortgaged premises for his own use and benefit, and that the mortgage dated May 26, 1899, is void against the trustee for want of proper filing," to review which order this petition is filed.

F. C. Winkler, for petitioner.
A. C. Conway, for respondent.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

A preliminary question suggests itself, whether the order to be reviewed is one in bankruptcy proceedings proper, or one in plenary suit or proceeding to determine the right of property. We have held In re Rusch, Bankrupt, 53 C. C. A. 631, 116 Fed. 270 (following In re Jacobs, 39 C. C. A. 647, 99 Fed. 539), that the power of the appellate court to review by original petition the ruling of the bankruptcy court extends only to an order made in the bankruptcy proceedings proper and does not embrace proceedings in suits by the trustee in bankruptcy. Here the petitioner was in possession of property claiming under the chattel mortgages in question. It was agreed that the property should be turned over to the trustee for sale by him, the proceeds to be covered into the registry of the bankruptcy court, the right of property to follow the fund. This being done, and the fund being placed in the registry of the bankruptcy court and in the bankruptcy proceedings, did that court have the right to determine, as a court of bankruptcy and in the bankruptcy proceedings, the respective rights of the parties to that fund? We take it that any court, whether one of equity, common law, admiralty, or bankruptcy, having in its treasury a fund touching which there is dispute, may, by virtue of its inherent powers, determine the right to the fund thus in its possession.

Jurisdiction in that respect is an incident of every court. Havens & Geddes Company v. Pierek, Trustee (C. C. A.) 120 Fed. 244; In re McCallum (D. C.) 113 Fed. 393. If otherwise, every court would be subject to the control of the co-ordinate courts, working havoc to the independence of judicial authority. A fund so possessed is in custodia legis and right to it may only be asserted and determined in the court which possesses it. In re Kellogg (D. C.) 113 Fed. 120. See White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183. The question remains whether such a proceeding arises strictly on the bankruptcy side of the court, or comes within the general rule governing intervening petitions against a fund in court.

The several Circuit Courts of Appeals have, in the following cases, entertained petitions for review of like orders of the bankruptcy court. The precise question here involved, however, was either not presented or was passed sub silentio. Second Circuit: In re New York Economical Printing Company, 49 C. C. A. 133, 110 Fed. 514; In re Neely, 51 C. C. A. 167, 113 Fed. 210; In re Garcewich, 53 C. C. A. 510, 115 Fed. 87. Fourth Circuit: McNair v. McIntyre, 51 C. C. A. 89, 113 Fed. 113. Fifth Circuit: In re Georgia Handle Company, 48 C. C. A. 571, 109 Fed. 632; In re Oconee Milling Company, 48 C. C. A. 703, 109 Fed. 866; Carling v. Seymour Lumber Company, 51 C. C. A. 1, 113 Fed. 483; Philips v. Turner, 52 C. C. A. 358, 114 Fed. 726. Sixth Circuit: In re Lemmon & Gale Company, 50 C. C. A. 247, 112 Fed. 296; In re Shirley, 50 C. C. A. 252, 112 Fed. 301. Seventh Circuit: In re Richards, 37 C. C. A. 634, 96 Fed. 935; In re Eggert, 43 C. C. A. 1, 102 Fed. 735. Eighth Circuit: In re Pekin Plow Company, 50 C. C. A. 257, 112 Fed. 308. Ninth Circuit: In re Beaver Coal Company, 51 C. C. A. 519, 113 Fed. 889. In Mueller v. Nugent, 44 C. C. A. 20, 105 Fed. 581, the Circuit Court of Appeals on petition for review entertained jurisdiction and reversed the order of the bankruptcy court, adjudging in contempt a third person holding property claimed to belong to the bankrupt and refusing to deliver it to the trustee. This decision was reversed in the Supreme Court (Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405), and the order of the bankruptcy court sustained upon the merits, no question being mooted of the propriety of the mode of procedure. See, also, Metcalf v. Barker (U. S. Supreme Court, decided December 1, 1902) 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. ——. In the First Circuit, in Re Hutchinson, 51 C. C. A. 159, 113 Fed. 202, it was ruled, apparently, that a review could only be had upon petition and not by appeal; but in Hutchinson v. Otis, 53 C. C. A. 419, 115 Fed. 937, the precise question is stated, but specially reserved and not resolved. In the Fifth Circuit it was held, in Re Abraham, 35 C. C. A. 592, 93 Fed. 767, that a petition for review, and not an appeal, was the proper remedy. In the Sixth Circuit, in Cunningham v. Bank, 43 C. C. A. 377, 103 Fed. 932, it was ruled that the question of the rank or lien of a claim was an incident to the allowance or rejection of the debt for which the lien was allowed or denied, and could be reviewed on appeal; and in Courier-Journal Job-Printing Company v. Schaefer-Meyer Brewing Company, 41 C. C. A. 614, 101 Fed. 699, by petition for review upon any matter of law. It would seem, however, that in these

latter cases specific claims for debt were preferred against the estate, embodying, either originally or by amendment, the claim for a lien. In this respect they are perhaps distinguishable from the case before us, there being here no general claim of debt filed against the estate, but only a claim for specific lien upon the fund.

We are disposed to hold (although the question is one not free from difficulty) that the order is one made in the bankruptcy proceedings proper. The general rule of practice of the courts is not without weight, although the particular question is not suggested in most of the cases which recognize the practice. The mortgaged property was in equity the property of the bankrupt, subject to such lien as the mortgagee had thereon. If its value was in excess of a valid lien, that excess would go to the trustee. When, therefore, the property was turned over to the trustee as the property of the bankrupt, subject to the lien, the trustee held the property and its proceeds as assets of the bankrupt and in the bankruptcy proceedings. We think the case is wholly different from Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, which was a suit by the trustee against a third party claiming adversely, while here the third party had by agreement turned over to the court the property in dispute with the right reserved to follow the fund. That fund was potentially in the custody of the court in the bankruptcy proceedings as assets of the estate and was subject to the disposition of the bankruptcy court in that bankruptcy proceeding, under section 2 (7) of the bankruptcy act (act July 1, 1898, 30 Stat. 546, c. 541 [U. S. Comp. St. 1901, p. 3421], which empowers the court to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto except as herein otherwise provided." We are the more inclined to adopt this construction of the act because thereby a speedy and inexpensive method is afforded of determining controversies with respect to a fund, and the policy of the bankruptcy act, as we think, sanctions this summary mode of procedure, the parties consenting thereto.

Coming, then, to the merits, it is first to be observed that we must accept as decisive the settled law of the state in which these chattel mortgages were given with respect to their validity. Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171; Bamberger v. Schoolfield, 160 U. S. 149, 159, 16 Sup. Ct. 225, 40 L. Ed. 374; Hartford Insurance Company v. Chicago, Milwaukee & St. Paul Railway Company, 175 U. S. 91, 100, 20 Sup. Ct. 33, 44 L. Ed. 84. We therefore search the law of the state of Wisconsin to ascertain whether the particular questions arising upon the mortgages before us have been settled in that state.

With respect to the first mortgage, it was held void as to the trustee in bankruptcy "by reason of the understanding inferred from the acts of the parties, giving the mortgagor the right to make sales from the mortgaged premises for his own use and benefit." This ruling is assailed for alleged misconception of the facts disclosed by the evidence and the failure to note that the additions to the stock exceeded the sales therefrom. We are not at liberty upon a petition for review to challenge the facts, or an inference of fact, found by the court below.

We may only consider and rule upon a question of law. In re Richards, 37 C. C. A. 634, 96 Fed. 935. We must therefore assume the ultimate fact found by the court below, that the mortgagor was given the right to make sales from the mortgaged property for its own use and benefit. It being conceded by the petitioner that the mortgage was not effective upon after-acquired property for want of proper stipulation to that end, the question therefore is whether, under the law of Wisconsin, this mortgage was voidable by creditors because of the fact found, and may be avoided by a trustee in bankruptcy in behalf of general creditors. The fact found renders the mortgage fraudulent in fact, so that it may not be asserted against creditors. This is the clear result of the rule established in the state of Wisconsin. Blakeslee v. Rossman, 43 Wis. 116; Bank of Kaukauna v. Joannes, 98 Wis. 321, 73 N. W. 997; Charles Baumbach Company v. Hobkirk et al., 104 Wis. 488, 80 N. W. 740; Durr v. Wildish, 108 Wis. 401, 84 N. W. 437. In the first and last cases cited it is said that where any such understanding exists, the fact that the mortgagee has taken possession of the property does not validate it in a contest with creditors. In Vernon v. Upson, 60 Wis. 418, 19 N. W. 400; Batten v. Smith, 62 Wis. 92, 98, 22 N. W. 342, and S. L. Sheldon Company v. Mayers, 81 Wis. 627, 51 N. W. 1082, it was ruled that an assignee under the state statute represents the rights of creditors as fully and completely as a sheriff could under an execution, and stands in much the same attitude and is possessed of quite similar powers to an assignee in bankruptcy under the bankruptcy act of 1867 (Act March 2, 1867, 14 Stat. 517, c. 176); and in Valley Lumber Company v. Hogan, 85 Wis. 366, 55 N. W. 415, it was ruled that under the statute of Wisconsin, Sanb. & B. Ann. St. § 1693b, after assignment an action to set aside a fraudulent or void conveyance could only be attacked by the assignee, even though such conveyance is void only as to a limited class of creditors, and the rule was applied to a chattel mortgage void only because of collusive delay in its filing and only as to those creditors who were misled thereby. The mortgage being thus, under the rulings of the Supreme Court of Wisconsin, invalid as to creditors because fraudulent in fact by reason of the acts of the parties as found by the court below, we cannot doubt that the trustee in bankruptcy may assert the right of creditors against the property covered thereby. In Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269, 275, 46 L. Ed. 405, it is said that:

"It is as true of the present law as it was of that of 1867 that the filing of the petition is a caveat to all the world and in effect an attachment and injunction (Bank v. Sherman, 101 U. S. 403 [25 L. Ed. 866]), and on adjudication title to the bankrupt's property became vested in the trustee (sections 70, 21e, Act July 1, 1898, 30 Stat. 565, 552, c. 541 [U. S. Comp. St. 1901, pp. 3451, 3431]), with actual or constructive possession, and placed in the custody of the bankruptcy court."

The taking of possession being unavailing to validate a mortgage fraudulent in fact, the petitioner is not entitled to that part of the fund which represents that part of the original stock mortgaged and remaining unsold and of which it took possession before the filing of the petition in bankruptcy.

Second. The question with respect to the second mortgage is whether, failing proper filing, a mortgagee taking possession of the mortgaged property prior to the filing of the petition in bankruptcy, but long subsequent to the giving of the mortgage, may hold the lien of the mortgage as against the trustee in bankruptcy representing general creditors.

The question has been in a general way spoken to by the Supreme Court of Wisconsin in a number of cases. Newman v. Tymeson, 12 Wis. 448; Morrow v. Reed, 30 Wis. 81; Lowe v. Wing, 56 Wis. 31, 13 N. W. 892; Rockwell v. Humphrey, 57 Wis. 410, 15 N. W. 394; Manufacturers' Bank of Milwaukee v. Rugee, 59 Wis. 221, 18 N. W. 251; Manson v. Phœnix Insurance Company, 64 Wis. 26, 29, 24 N. W. 407, 54 Am. Rep. 573; Standard Paper Company v. Guenther, 67 Wis. 101, 30 N. W. 298; Sanger v. Guenther, 73 Wis. 354, 41 N. W. 436; Ullman v. Duncan, 78 Wis. 213, 47 N. W. 266; Ryan Drug Company v. Hvambsahl, 89 Wis. 61, 61 N. W. 299; Wagg-Anderson Woolen Company v. Dunn, 92 Wis. 409, 66 N. W. 354. The holding seems to be to the effect, as we read the decisions, that a chattel mortgage, whether filed or not and whether possession thereunder be given or not, is valid between the parties. It is not valid against any other person than the parties thereto, unless possession be given or the mortgage be filed. It is invalid as against execution and attaching creditors who have levied upon the property prior to the taking of possession, and—in case of collusive delay in filing—is invalid upon the ground of estoppel as to creditors who, subsequent to the making of the mortgage and prior to the taking of possession, have given credit to the mortgagor upon the faith of unincumbered property. Thus in Morrow v. Reed it was ruled that an irregularity in the filing of a mortgage is cured by a subsequent delivery of the property to the mortgagee, as against parties who have not acquired paramount rights before such delivery. In the Rugee Case, the Ryan Drug Case, and the Dunn Case, it was held that an attachment would be sustained by a creditor in case of nonfiling or nondelivery of possession of the property, even though no fraudulent intent was shown; but in each of these cases the attachment was levied before the filing of the mortgage or delivery of possession and while the property remained in the possession of the mortgagor. In the Ryan Case it is remarked obiter at page 65, 89 Wis., page 300, 61 N. W.:

"After having been filed, it would be valid, of course, as to subsequent creditors, but as to creditors who became such intermediate its execution and the filing the inference of fraud is conclusive."

And here it may be remarked that, filing being a mere substitute for possession, the latter must be fully as effective as the former. In the Manson Case it is said the only effect of the failure to file the mortgages was to render them invalid as against creditors who had obtained liens upon the property by attachment or levy under execution. In the two Guenther Cases collusive delay in the filing was held to estop the mortgagee from asserting his mortgage against creditors who gave credit to the mortgagor after execution and before filing

and upon the faith that the property was unincumbered; and this, although there was no actual intent to defraud.

The precise question before us would not seem to have been presented to the Supreme Court of Wisconsin, and so it may properly be said that the question has not been ruled; but the trend of decisions in that court is, we think, as we have stated, namely, in the absence of fraud in fact, the mere omission to file, or an improper filing, or failure to take possession, is cured by the subsequent delivery of possession before creditors have obtained a lien upon the property by execution or attachment. The term "void" is often used in the statutes and decisions in a way to mislead. A law which declares an instrument valid between parties, but void as to creditors, means that it is voidable by creditors who choose to attack it. Being valid as between the parties, it is good as to all the world except those who assail it upon the grounds permitted by the law. Sometimes, as to unrecorded instruments, fraud in law is conclusively presumed as against creditors. Sometimes only a rebuttable presumption is imposed. The latter is the case under Rev. St. Wis. 1898, § 2310, which makes every sale or assignment of goods unaccompanied by delivery and followed by an actual or continued change of possession presumably fraudulent and void as against creditors of the vendor, and imposes upon the vendee the burden of rebutting the presumption. When the statute (Rev. St. Wis. 1898, § 2313) declares that a chattel mortgage shall be invalid against any other person than the parties thereto, unless possession be delivered and retained, or the mortgage be filed—there being no actual fraud and no collusive delay in the filing or the taking of possession—we think the statute must be construed to mean that the omission to file or to take possession renders the mortgage invalid only as to the creditor who, by execution or attachment, has acquired a lien upon the property. Such construction approves itself to our thinking as logical and just, and one which we are at liberty to adopt in the absence of direct ruling to the contrary by the Supreme Court of Wisconsin. Such construction is given to similar statutes elsewhere, especially in the state of Massachusetts, whence the Wisconsin statute was derived. Mitchell v. Black, 6 Gray, 100; Blanchard v. Cooke, 144 Mass. 207, 227, 11 N. E. 83; Sawyer v. Turpin, 91 U. S. 114, 23 L. Ed. 235; Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816; McTaggart v. Rose, 14 Ind. 230; Forrester & Company v. Kearney National Bank, 49 Neb. 655, 68 N. W. 1059; Field v. Baker, 12 Blatchf. 438, Fed. Cas. No. 4,762; In re Collins, 12 Blatchf. 548, 552, Fed. Cas. No. 3,007; In re Shirley, 50 C. C. A. 252, 112 Fed. 301; Graham Button Company v. Spielmann, 50 N. J. Eq. 120, 123, 24 Atl. 571; Sumner v. McKee, 89 Ill. 127, 132; Union Trust Company v. Trumbull, 137 Ill. 146, 27 N. E. 24; Hooven v. Burdette, 153 Ill. 672, 39 N. E. 1107. See, also, authorities assembled in 5 A. & E. Ency. of Law (2d Ed.) p. 1016.

In Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073, an unfiled mortgage was held invalid as to antecedent creditors who had levied by execution upon the property while in the possession of the mortgagor. It seems to be established law in New York that only those creditors can assert the invalidity of a mortgage who come armed with legal

process. In re New York Economical Printing Company, 49 C. C. A. 133, 110 Fed. 514.

Assuming, then, that the filing of the petition in bankruptcy is, as stated in Mueller v. Nugent, supra, in effect an attachment, and a seizure and sequestration of the property of the bankrupt for the benefit of his creditors, the fact remains that possession of the mortgaged property was taken by the mortgagee prior to the filing of the petition in bankruptcy, so that the case is not otherwise than that of possession taken before execution upon a judgment in favor of a creditor. We therefore hold that, with respect to the proceeds of the property covered by the second mortgage, the order under review was erroneous in not yielding the proceeds to the mortgagee.

The decree or order of March 14, 1901, here under review, is reversed, with directions to the court below to proceed in the matter in conformity to this opinion.

The clerk will certify this ruling to the District Court.