ROBERT BROWN, as Trustee in Bankruptcy of the Estates of CHARLES J. KNAPP and Others, Individually, and as Copartners Constituting the Firm of KNAPP BROTHERS, Respondent, *v.* DEPOSIT NATIONAL BANK and LUCYE PINCHOT LEDERER, Appellants, Impleaded with Others, Defendants.*

Third Department, March 17, 1932.

* See 125 Misc. 247.

*Robert S. Wickham*, for the appellants.

*E. D. Cumming* [*Archibald Howard* of counsel], for the respondent.

HINMAN, J. The sole question here is as to the right of setoff upon the facts stated.

There is nothing in the record to indicate any illegal dealings with the bank's property by the firm of Knapp Brothers, or any of them.

The finding is that there was a deposit of the bank's funds with the firm as private bankers in the form of a depositor's account. There is nothing to indicate any misappropriation of funds by the firm, or that the firm treated this deposit account any differently than it had the other deposit accounts with it. There is nothing to indicate that they held these funds as trustees, notwithstanding the fact that two members of the firm were officers and directors of the bank during that period, and as such were engaged with the other directors in liquidating the affairs of the bank. The relationship between the bank and the firm, so far as this deposit was concerned, was that of debtor and creditor, and the balance of $8,725.51 due the bank at the time of bankruptcy was an ordinary debt of the firm to the bank. It is conceded that no claim was filed on behalf of the bank against the bankrupts' estate and no other proceeding was had by the bank to determine whether there were illegal dealings with the bank's property. The liquidating committee simply assumed the right to make this setoff. There is proof in the record that the firm was actually insolvent at the time it was adjudicated a bankrupt, and that the estate of the firm was not sufficient to pay its creditors in full. I find reference in the record to the payment of a seven and one-half per cent dividend by the bankrupts' estate and other references to a dividend somewhere between twenty-one per cent and thirty-two and one-half per cent. This indicates that the rights of the other general creditors of the bankrupt estate are involved. They have not been paid in full.

It seems obvious that any attempt to procure the payment of a debt owing by the bankrupts at the time of the filing of the petition in bankruptcy must be controlled by the Bankruptcy Act. Section 68, paragraph a, of the Bankruptcy Act (U. S. Code, tit. 11, § 108, par. a) provides: " In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." The question is whether these were mutual debts. ·It seems to me they were not and could not be under the authorities. " A debt to or from the trustee in bankruptcy and arising after the bankruptcy in the management of the estate cannot be set off against a debt from or to the bankrupt before the bankruptcy." (Loveland Bankruptcy [3d ed.], 376; *Howard* v. *Magazine & Book Co.*, 147 App. Div. 335, 337.) " It is conceded and has been authoritatively decided that the adoption of a resolution for voluntary liquidation [of a National bank] does not effect a dissolution of the corporation, but merely suspends its ordinary functions and that it continues in existence for the purpose of

liquidating its affairs and that its directors are not ousted from office, and that, at least in the absence of other action by the stockholders, the duty to liquidate the business devolves upon them." (*Planten* v. *National Nassau Bank*, 174 App. Div. 254, 257; affd., 220 N. Y. 677.) The proceeding constitutes the dissolution of a solvent bank. (Id. 258.) The Deposit National Bank was a solvent bank as was indicated by the fact that the directors, whose duty it was to liquidate the bank, succeeded in paying the debts and in declaring a 121 per cent dividend prior to the time the firm of Knapp Brothers went into bankruptcy. The sole estate of the bank when the petition in bankruptcy was filed, outside of its interest as a creditor of the bankrupt firm, was its bank building. Necessarily before any right of action could accrue to the trustee in bankruptcy, this real estate had to be sold and converted into money. Before the final dividend had been declared there was no debt from the bank to the trustee of the firm. The trustee as stockholder had only an equitable interest in the corporation, namely, a right to a distributive share of whatever dividends were declared. " Quite early in the history of national banking associations it was held by the Federal courts that a national bank had no lien upon its stock as against indebted stockholders." (*Bridges* v. *National Bank of Troy*, 185 N. Y. 146, 149.) Therefore, the Deposit National Bank had no lien upon the shares of capital stock of the bank owned by Knapp Brothers, or upon the moneys payable to the trustee by virtue of such ownership. The stock of the bank belonged to the firm before bankruptcy and at adjudication. The firm could have sold the stock immediately prior to their going into bankruptcy and could have given good title thereto. Immediately after bankruptcy and thenceforth the trustee could have done the same thing. Therefore, the creditors were entitled to have this property applied to the payment of their debts, undiminished by any setoff not existing at that time. (*Matter of Peoples Surety Co., No. 2*, 186 App. Div. 663, 667; affd., 226 N. Y. 697.) Who enjoyed the right to the dividend depended upon who were the owners of the stock at the time the dividend was declared by the bank. (*Bridges* v. *National Bank of Troy, supra*, 151.) Therefore, the creditors of the bankrupt had a right to such dividend unless the bank or its representatives had a lien on the stock (or the moneys to be distributed by dividend thereon) to secure payment of any debt due the bank from the firm. It is clear that the bank had no such lien. It is equally clear that the incidental right to a dividend not yet matured was not entitled to be set off against a debt of the firm existing at the time of adjudication in bankruptcy, because no right of action for the dividend existed until declared

after such adjudication, and the debts were, therefore, not mutual debts. In *Matter of Peoples Surety Co.* (*supra*, 668) one of the justices of the Appellate Division dissented upon the ground that the bank when it failed owned the stock of the surety company, and the incidental right to any liquidation dividend thereon, and owed the debt to the surety company, and that, therefore, the surety company should be allowed the setoff. A contrary view, however, was affirmed by the Court of Appeals. Even in *Gerseta Corporation* v. *Equitable Trust Co.* (241 N. Y. 418), relied upon by the appellants, where setoff was allowed in equity, the reason was that the two companies in the course of trade had operated together on a basis of liability for the balance of a mutual account and not for the full amount owing by one to the other; that at the time of setoff the trading company had not dissolved and was not in the hands of a trustee for the benefit of creditors. Its affairs had not passed out of its hands, even though claims against it by the other company matured after insolvency in fact. Therefore, there was a mutuality of debts properly set off in equity. The court said, however (at p. 425): " Only after the estate has passed upon a trust to hold for and distribute among creditors, does the former and natural equity disappear in superior equities vesting in the general body of creditors. [Citing *Fera* v. *Wickham*, 135 N. Y. 223, 230.] The rule in insolvency should not be applied where it would result in a preference or direct advantage to the debtor rather than equality among creditors. The right of setoff existed and was not defeated by the fact that Trading Co. was insolvent in fact before the claim of Gerseta against it had matured." In the present case the rights of the general body of creditors intervened at the time of the bankruptcy. If the bank had any priority claim against the bankrupt firm and its general body of creditors on the theory that the balance due the bank was a trust fund rather than an ordinary deposit, or that the bankrupts had misappropriated the funds of the bank, such a claim would have to be prosecuted in the bankruptcy court which had the custody of the funds. (*Murphy* v. *Hofman Co.*, 211 U. S. 562; *Whitney* v. *Wenman*, 198 id. 539; *Matter of Antigo Screen Door Co.*, 123 Fed. 249; *Matter of Nichols*, 166 id. 603; *Matter of City Bank of Dowagiac*, 186 id. 413; *Erie R. Co.* v. *Dial*, 140 id. 689; *Board of Commissioners* v. *Strawn*, 157 id. 49.) No such attempt was made by the liquidating committee of the bank and as the referee stated at the conclusion of his opinion: " As the case now stands, to allow the offset to be made and the stockholders exclusive of the trustee to receive all of the assets of the Deposit National Bank, would appear to be inequitable and unjust."

The final judgment and the interlocutory judgment should be affirmed, with costs.

All concur, except HILL, J., who dissents, with a memorandum; RHODES, J., not sitting.

HILL, J. (dissenting). I dissent and favor a modification of the judgment on the ground that the trustee in bankruptcy had no title to the $8,725.51, as it was a trust fund in the hands of the Knapps before their bankruptcy. That the new liquidators should have taken such sum into consideration, together with the $14,343.51 which was in their own possession when they made the distribution among stockholders, then offset against the amount allocated to the Knapps in bankruptcy the $8,725.51 in the possession of their trustee in bankruptcy.

Final judgment and interlocutory judgment affirmed, with costs.